UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
A.K, a minor (CHRISTIAN KILLORAN,
as parent),

               Plaintiffs,

MEMORANDUM & ORDER
17-CV-0866(JS)(SIL)

    -against-

WESTHAMPTON BEACH SCHOOL DISTRICT,
MICHAEL RADDAY-SUPERINTENDENT,
SUZANNE M. MENSCH, HALSEY C. STEVENS,
STACY RUBIO, CLAIRE BEAN, JAMES N. HULME,
JOYCE DONNESSON, and GEORGE R. KAST, JR.
individually and collectively as Board
of Education Members),

               Defendants.
---------------------------------x
CHRISTIAN KILLORAN and TERRIE KILLORAN,
individually and on behalf of their infant
son, A.K., a minor,

               Plaintiffs,

    -against-

WESTHAMPTON BEACH UNION FREE SCHOOL
DISTRICT, MICHAEL RADDAY (individually and
in his official capacity as SUPERINTENDENT),
SUZANNE M. MENSCH, HALSEY C. STEVENS,
STACY RUBIO, CLAIRE BEAN, JAMES N. HULME,
JOYCE DONNESSON, and GEORGE R. KAST, JR.,
(individually and in their respective
official capacities as Board of
Education Members),

               Defendants.
---------------------------------x

APPEARANCES
For Plaintiffs:       Christian Killoran, Esq., pro se
                 Terrie Killoran, pro se
                 132-13 Main Street
                 Westhampton, New York 11978

                 Thomas J. Killeen, Esq.

Thomas J. Killeen P.C.
32645 Main Road
Cutchogue, New York 11935

For Defendants:     Ann C. Leahey, Esq.
                    DEVITT SPELLMAN BARRETT, LLP
                    50 Route 111
                    Smithtown, New York 11787

SEYBERT, District Judge:

Pro se plaintiffs Christian Killoran and Terrie Killoran (together, "the Parents"), individually and as parents to A.K., a child with Down Syndrome, (collectively, the "Plaintiffs") commenced this consolidated action against defendants Westhampton Beach School District, ("Westhampton" or "the District"), Michael Radday, ("the Superintendent"), Suzanne M. Mensch, Halsey C. Stevens, Stacy Rubio, Claire Bean, James N. Hulme, Joyce Donnesson, and George R. Kast, Jr. (together, the "School Board," and collectively with Westhampton and the Superintendent, "Defendants"). Plaintiffs' Second Amended Consolidated Complaint, ("SACC," D.E. 52, at 1-77) alleges violations of: (1) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.; (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (3) Section 1983 of Title 42 of the United States Code ("Section 1983"), 42 U.S.C. § 1983; and (4) Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a) et seq. Plaintiffs' SACC additionally (5) appeals the 2017 administrative decisions of independent hearing officer ("IHO") James A. Monk ("IHO Monk") and state review officer ("SRO")

Steven Krolak ("SRO Krolak"); (6) seeks an equitable order directing Defendants to enroll A.K. and to utilize an inclusion consultant to design A.K.'s Individualized Educational Plan ("IEP") for implementation in the District; and (7) appeals the July 11, 2018 SRO decision.

Currently pending before the Court are Defendants' motion for partial judgment on the pleadings on the first, second, third, fourth, and sixth causes of action, (Defs. Mot., D.E. 60), and Plaintiffs' motion for partial summary judgement on the first, second, third, and fourth causes of action, (Pls. Mot., D.E. 62). The Court has carefully reviewed the administrative record in this case. For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion is DENIED.

BACKGROUND

I. Factual Background[1]

Plaintiffs have filed numerous administrative proceedings and multiple actions in this Court. In the interest of brevity, only the proceedings relevant to the issues presented in the parties' motions are discussed below.

---

[1] The following facts are drawn from the SACC, the parties' Rule 56.1 Statements, the Administrative Record, and supporting documents. Any relevant factual disputes are noted.

At the time the SACC was filed, A.K. was a fifteen-year-old boy born with Down Syndrome. (SACC ¶ 2.) A.K. attended elementary school, completing the sixth grade in 2015 in his home school district, the Remsenburg-Speonk School District ("Remsenburg").[2] (Pls. 56.1 Stmt., D.E. 41, ¶ 10; Defs. Reply 56.1 Stmt., D.E. 44, at ECF pp. 13-24, ¶ 8.) While at Remsenburg, in fifth and sixth grade, "he received instruction in an integrated co-teaching class (ICT), educated with disabled and non-disabled peers. [A.K.] also received the support of a 1:1 aide, as well as related services of speech and language therapy, occupational therapy, and physical therapy." (IHO Lederman Dec. at 4.)

Remsenburg, which offers instruction only through the sixth grade, contracts with Westhampton and Eastport-South Manor School District ("Eastport") to act as receiving schools for Remsenburg students in seventh grade through high school, and students go to one district or the other.[3] (Pls. 56.1 Stmt. ¶ 10.) According to A.K.'s parents, they reached out to Westhampton Beach Middle School ("Westhampton MS") as early as 2013 expressing their

---

[2] In grades 3 and 4, A.K. was enrolled in an 8:1:1 class in the Center Moriches school district but returned to Remsenburg for grades 5 and 6. (IHO Lederman Dec., Defs. Mot. Ex. A, D.E. 60-2, at 4.)

[3] Plaintiffs allege that pursuant to the contract between Westhampton and Remsenburg, Westhampton was obligated to enroll A.K. as a student. (Pls. 56.1 Stmt. ¶ 11.) Defendants deny that their agreement with Remsenburg contains an enrollment obligation. (Defs. Reply 56.1 Stmt. ¶ 11.)

interest in sending A.K. there upon his completion of the sixth grade. (SACC ¶ 60; IHO Lederman Dec. at 6.) Plaintiffs stressed that it was important for A.K to be educated in Westhampton MS so he could attend the school that his siblings would be attending and maintain his friendships as he transitioned out of elementary school. (SACC ¶¶ 70, 74; IHO Lederman Dec. at 7.)

During A.K.'s sixth-grade year, Remsenburg developed an initial IEP for A.K. for the upcoming 2015-2016 school year that recommended placement in an 8:1:1 program (8 students, 1 teacher, and 1 teaching assistant) at Eastport. (IHO Lederman Dec. at 8.) "The program was described as a life skills program focused on teaching self-care skills, independence skills, and vocational career skills." (IHO Lederman Dec. at 8.) However, upon A.K.'s graduation from elementary school in June 2015, he chose to attend Westhampton MS. (Defs. Reply 56.1 Stmt. ¶ 15.) Plaintiffs allege that Westhampton refused to enroll A.K. or to convene a Committee on Special Education ("CSE") to determine his IEP. (SACC ¶ 90; Pls. 56.1 Stmt. ¶¶ 16, 19.)

Plaintiffs challenged Remsenburg's initial IEP by filing an administrative complaint against the school. (Defs. 56.1 Counterstmt., D.E. 44 at ECF pp. 24-45, ¶ 5.) In accordance with a stipulation of settlement ("Stipulation") executed July 16, 2015 by Remsenburg and Plaintiffs, A.K.'s IEP was amended to recommend the following special services: (a) a 15:1:1 self-contained class

placement; (b) a resource room in a 3:1:1 setting, five times per week for forty minutes; (c) a 1:1 teaching assistant for six hours and thirty minutes per day; (d) a consultant for integration for sixty hours over the school year to consult with staff on curriculum, behavior, and program development; and (e) the related services of speech language therapy, physical therapy, and occupational therapy. (Defs. 56.1 Counterstmt. ¶¶ 9-11; IHO Lederman Dec. at 8.) The Stipulation further required Remsenburg to submit a letter to Westhampton, which was not a party to the Stipulation, requesting that it have the outlined program implemented at Westhampton MS. (Defs. 56.1 Counterstmt. ¶¶ 11-12.)

In accordance with the Stipulation, on July 9, 2015, a lawyer for Remsenburg wrote a letter to Westhampton's attorney setting forth the above changes to A.K.'s IEP and stating that "[Remsenburg] believes that Westhampton is able to implement the referenced program." (Defs. 56.1 Counterstmt. ¶ 13.) Westhampton denied the request and refused to admit A.K., stating that the District was not "in a position to accommodate the severely intellectually disabled child in a 15:1:1 class that possesses Regents-track students being administered the State's intensive core curriculum." (IHO Lederman Dec. at 9.)

On August 13, 2015, Plaintiffs filed a federal action in this Court against the Westhampton Board of Education seeking

injunctive relief directing it to permit A.K. to attend Westhampton for the 2015-2016 academic year. (SACC ¶ 24; Defs. 56.1 Counterstmt. ¶ 16; see C.K . v. Bd. of Educ. of the Westhampton Beach Sch. Dist., 15-CV-4743 (E.D.N.Y.).) On December 18, 2015, Plaintiffs amended their complaint by adding claims of discrimination under the IDEA, the ADA, Section 504, and Section 1983. (Defs. 56.1 Counterstmt. ¶ 16.) On May 9, 2016, Judge Arthur D. Spatt dismissed the amended complaint without prejudice for lack of subject matter jurisdiction for Plaintiffs' failure to exhaust their claims at the administrative level under the IDEA. (C.K . v. Bd. of Educ. of the Westhampton Beach Sch. Dist., 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016).)

Subsequently, on May 10, 2016, Plaintiffs filed their initial administrative due process complaint against Westhampton seeking an impartial hearing regarding the 2015-2016 and 2016-2017 school years. (SACC ¶¶ 25, 31, 116; Defs. 56.1 Counterstmt. ¶ 2.) A hearing was held before an IHO, and on June 4, 2016, the District's motion to dismiss the due process complaint was granted. (Defs. 56.1 Counterstmt. ¶ 25; IHO Lederman Dec. at 1-2.) However, on July 11, 2016, the SRO issued a decision vacating the dismissal of the case, and the matter was consolidated before a different IHO in a pending proceeding Plaintiffs had filed against Remsenburg. (Defs. 56.1 Counterstmt. ¶ 31; IHO Lederman Dec. at 2.)

At the direction of the IHO, in September 2016, Westhampton enrolled A.K. and convened a CSE. The CSE issued a recommendation for A.K. to be placed in an 8:1:1 program within Eastport for the 2016-2017 school year. (Defs. 56.1 Counterstmt. ¶¶ 38-40.) On September 27, 2016, Plaintiffs filed another due process complaint against Westhampton challenging the District's recommendation for A.K.'s program and placement for the 2016-2017 school year. (Defs. 56.1 Counterstmt. ¶ 41.) On October 11, 2016, IHO Nancy M. Lederman ("IHO Lederman") consolidated this matter with the due process complaints that were already pending before her. (Defs. 56.1 Counterstmt. ¶ 42.) At a hearing on November 10, 2016, the parents withdrew all complaints against Remsenburg. (Defs. 56.1 Counterstmt. ¶¶ 43-44.)

The following are the Court's summaries of the administrative decisions in the proceedings against Westhampton relevant to the pending motions.

A. <u>IHO Lederman Decision</u>

On January 26, 2017, IHO Lederman issued a decision finding that Westhampton had failed to provide A.K. with a free and appropriate education ("FAPE") for the 2015-2016 and 2016-2017 academic years. (Pls 56.1 Stmt. ¶ 1; Defs.' Reply 56.1 Stmt. ¶ 1.) The IHO noted the "disheartening" actions of both the District and the Parents. (IHO Lederman Dec. at 36-38.) According to IHO Lederman, there was "considerable misunderstanding among all

parties about the obligation of Westhampton [ ] concerning A.K."
(IHO Lederman Dec. at 10.)  Initially, District officials refused
to meet with A.K.'s parents to discuss the potential for his
enrollment in the District.  (IHO Lederman Dec. at 36.)
Westhampton simply denied Remsenburg's efforts to seek placement
in Westhampton, "offering no explanation other than to repeat that
the district could not accommodate [A.K.] in its program and
foreclosing any opportunity for discussion."  (IHO Lederman Dec.
at 36.)  Notably, had Westhampton enrolled A.K., it would have
been responsible for his CSE.  (IHO Lederman Dec. at 10.)

IHO Lederman concluded that once the administrative
proceedings commenced and Westhampton officials announced their
intention to enroll A.K. and convene a CSE, "they conducted what
could only be described as a cursory CSE meeting, without
representation from either Remsenburg [ ] or Eastport [ ], adopting
the earlier IEP from Remsenburg with no further investigation of
other possibilities for AK's placement."  (IHO Lederman Dec. at
36-37.)  IHO Lederman found that the September 2016 CSE meeting
"did little more than satisfy the basic requirement that a meeting
be held." (IHO Lederman Dec. at 38.)  She noted that Plaintiffs
"were equally culpable in the conduct of the [September 2016] CSE
meeting," focusing only on placement in the District and
threatening to walk out.  (IHO Lederman Dec. at 38.)  She found
that the Parents were resistant to cooperating in developing an

educational plan for A.K., as evidenced by their refusal to allow him to attend the available placement initially recommended in Eastport. (IHO Lederman Dec. at 37.) Instead, the Parents insisted that A.K. remain behind and repeat the 6th grade in the 2015-2016 school year, "receiving one-on-one instruction in a class by himself from a special education teacher for only part of the day."[4] (IHO Lederman Dec. at 37.) The IHO commented that keeping A.K. "out of a regular school program for an entire school year" and "[d]epriving [A.K.] of available instruction was hardly in his best interest." (IHO Lederman Dec. at 37.)

Ultimately, the IHO found that in light of the contract between Remsenburg and Westhampton, in failing to enroll A.K., Westhampton procedurally violated A.K.'s right to a FAPE for the 2015-2016 school year. (IHO Lederman Dec. at 40-41.) IHO Lederman "accept[ed] that Westhampton [ ] officials were unaware of their obligation and that the parents' focus on discrimination neglected the technicalities related to educational placement." (IHO Lederman Dec. at 40.) Nevertheless, IHO Lederman acknowledged that it was inappropriate for Remsenburg, an elementary school district, to function as a CSE for a middle school student, and that in failing to enroll A.K., Westhampton "impeded the parents'

---

[4] For the following 2016-2017 school year, Plaintiffs had A.K. home schooled throughout the pendency of their legal actions. (IHO Lederman Dec. at 38.)

opportunity to participate in the decision making." (IHO Lederman Dec. at 40-41.)

The IHO also determined that Westhampton failed to provide a FAPE for A.K. for the 2016-2017 school year on procedural and substantive grounds. (IHO Lederman Dec. at 41, 49.) Procedurally, though Westhampton did act to enroll A.K. and convene a CSE in September 2016, the meeting was held without any participation from Eastport--the recommended placement--in violation of regulations requiring their attendance, and without any representation from Remsenburg, despite the fact that it relied on Remsenburg's earlier CSE meeting. (IHO Lederman Dec. at 42-43.) Further, the IHO found that "[i]n making its recommendation, the CSE did not consider the full range of possible placement to meet AK's needs," focusing "almost exclusively on the 8:1:1 recommendation, with only limited attention to a 12:1:1 placement." (IHO Lederman Dec. at 43.)

Substantively, IHO Lederman determined that the District's September 2016 recommendation of the 8:1:1 program in Eastport failed to provide a FAPE for A.K. (IHO Lederman Dec. at 47) Though it was an appropriate "life skills" program, it was only offered in a class with only nonverbal students, which would be "wholly inappropriate" and deprive A.K. of an educational benefit. (IHO Lederman Dec. at 47.)

The IHO concluded that Westhampton had never reviewed its ability to educate A.K. in-district before it "outsourced" him to another district. (IHO Lederman Dec. at 53.) "[T]he district never considered the possibility, rejecting it outright even before it ever saw a single piece of paper regarding A.K." (IHO Lederman Dec. at 53.) However, the IHO noted that "[t]he ruling that A.K. was not provided a FAPE is not because the placement decision was for an out-of-district site." (IHO Lederman Dec. at 49.) "The simple ruling here is that Westhampton Beach is not required to create a program, but it is required to examine whether AK's needs can be met within a district class with supplementary aids and services." (IHO Lederman Dec. at 53-54.)

However, IHO Lederman also pointed out that the Parents failed to provide the required description of A.K. to assist in his educational placement and instead focused exclusively on location, stressing the importance of community above all other factors in A.K.'s success. (IHO Lederman Dec. at 43-44, 51.) IHO Lederman emphasized that there is no right to a neighborhood school assignment under the IDEA. (IHO Lederman Dec. at 52.)

Significantly, there was no disagreement on the type of program A.K. needed or the goals of either the Remsenburg IEP or the Westhampton IEP other than location. (IHO Lederman Dec. at 45, 46.) Both parties expressed a willingness for placement in either a 12:1:1 or 8:1:1 setting. (IHO Lederman Dec. at 50.) The

IHO found that the "simple implementation of [A.K.'s] IEP, as requested by the parent cannot be done as in any program as currently structured within the Westhampton [ ] school district" as it does not have a 15:1 program other than the Regents track program [or a] 12:1:1 or 8:1:1 program, and it "does not have a life skills program." (IHO Lederman Dec. at 52.)

The IHO ordered the District to formally enroll A.K. in Westhampton, convene a CSE, and provide an appropriate placement for A.K. (IHO Lederman Dec. at 54.) The IHO further ordered the District to hire a qualified consultant on inclusion to advise and report to the District on inclusion for A.K. at the middle school level. (IHO Lederman Dec. at 54-55.) "The consultant may also examine programs in other districts to assess their suitability for A.K., including programs in [Eastport]." (IHO Lederman Dec. at 55.) However, the CSE was required to invite to the CSE meeting representatives from any district where it intended to place A.K. (IHO Lederman Dec. at 55.)

Additionally, IHO Lederman denied any compensatory award, noting that Plaintiffs had not sought compensatory education in their due process complaint but rather raised it for the first time in their post-hearing brief. (IHO Lederman Dec. at 55.) Lederman further noted that by keeping A.K. at Remsenburg to repeat sixth grade, the parents intentionally denied A.K. from appropriate instruction while they pursued their legal claims.

(IHO Lederman Dec. at 55-56.)  The IHO refused to address Plaintiffs' Section 504 and ADA claims, noting that "the Westhampton Beach district had declined to grant me as IHO authority to hear the discrimination complaint that was included in their due process complaints."  (IHO Lederman Dec. at 32-33.)

B. SRO Harrington Decision

Though Defendants did not appeal the IHO's determination that they denied A.K. a FAPE, Plaintiffs appealed portions of the IHO's order to SRO Sarah L. Harrington ("SRO Harrington"). Specifically, Plaintiffs argued that IHO Lederman erred in denying their request for "compensatory damages."  (SRO Harrington Dec. Defs. Mot. Ex. B, D.E. 60-3, at 7.)  They also contested the IHO's decision conferring the District with the "unilateral discretion" to hire an inclusion consultant and sought an order granting the Parents a "meaningful role" in the selection and hiring of the inclusion consultant.  (SRO Harrington Dec. at 5.)  Finally, Plaintiffs challenged the IHO's decision authorizing the inclusion consultant to examine other school district programs' abilities to fulfill the District's FAPE obligations, and instead sought an order limiting the scope of the inclusion consultant's inquiry to whether Westhampton could implement A.K.'s IEP within the District.  (SRO Harrington Dec. at 5.)

On March 23, 2017, SRO Harrington dismissed Plaintiffs' appeal.  Specifically, the SRO upheld the IHO's denial of

compensatory education services, finding that Plaintiffs failed to request such relief in their due process complaint notice as required by the IDEA, raising it for the first time in their closing brief to the IHO.[5]  (SRO Harrington Dec. at 10.)  The SRO did note, however, that the IHO should not have considered the "appropriateness of the [Plaintiffs'] decision to maintain [A.K.] in his pendency placements for the duration of the administrative proceedings" in relation to their request for compensatory education.  (SRO Harrington Dec. at 12.)  However, she concluded that "[p]utting aside [ ] whether the parents' request for compensatory education could be dismissed based solely upon their failure to request such relief, the parents' remaining arguments in the request for review [ ] do not support an award of compensatory education."  (SRO Harrington Dec. at 11.)  SRO Harrington pointed out that Plaintiffs' desire to punish the District would not serve the remedy's purpose of putting the student in the position he would have been in had the District provided him with a FAPE.  (SRO Harrington Dec. at 11.) Ultimately, the SRO upheld the IHO's denial of compensatory education, finding that A.K. did receive his special education

---

[5] As it was not entirely clear as to whether Plaintiffs were seeking compensatory damages in addition to compensatory education, the SRO noted that monetary relief, including compensatory damages, attorneys' fees, and other costs, is not available in the administrative forum under the IDEA.  (SRO Harrington Dec. at 7-8.)

services in "arguably, the most supportive and intensive settings available" for the 2015-16 and 2016-17 school years. (SRO Harrington Dec. at 13.)

Additionally, the SRO upheld the IHO's directives related to the retention of an inclusion consultant, noting that the District was required to convene a CSE to review and consider the consultant's report and to invite the inclusion consultant to the meeting to discuss the report's findings. (SRO Harrington Dec. at 14.) SRO Harrington did, however, further direct the District to forward a copy of the inclusion consultant's report to the Parents at least five business days to review the report prior to the scheduled CSE meeting. (SRO Harrington Dec. at 14.) The SRO also "strongly suggested that the parents cooperate in the CSE review process." (SRO Harrington Dec. at 14.)

Finally, the SRO rejected Plaintiffs' contentions that A.K. must be educated within the District and that the inclusion consultant's role must be limited to implementing A.K.'s IEP within the District. (SRO Harrington Dec. at 15.) The SRO acknowledged that "while a district remains obligated to consider distance from home as one factor in determining the school in which a student's IEP will be implemented, this provision does not confer an absolute right or impose a presumption that a student's IEP will be implemented in the school closest to his or her home or in in his or her neighborhood school." (SRO Harrington Dec. at 15.)

The next set of administrative decisions results from Plaintiffs' grievances with the District's implementation of IHO Lederman's directives.

C. <u>IHO Monk Decision</u>

On April 12, 2017, Plaintiffs filed another due process complaint against Westhampton alleging that A.K. was being denied placement in Westhampton in violation of his right to a FAPE, seeking as relief his enrollment and admission in the District. (IHO Monk Dec. Defs. Mot. Ex. C, D.E. 60-4, at 3, 5, 6.) The crux of Plaintiffs' complaint was a challenge to the recommendation made by the Westhampton CSE for A.K.'s placement outside the District for the 2016-2017 and 2017-2018 school years. (IHO Monk Dec. at 6.)

In his decision dated August 15, 2017, IHO Monk noted that Westhampton had enrolled A.K. and convened a CSE meeting as directed by IHO Lederman, but that as of August 1, 2017, A.K.'s IEP had not been finalized. (IHO Monk Dec. at 3-4, 17.) In accordance with IHO Lederman's prior order, two consultants had been retained--one selected by Westhampton and the other chosen by Plaintiffs--to conduct a review of A.K.'s educational record and examine the instructional programs available in Westhampton and other districts. (IHO Monk Dec. at 3-4.) The consultants expressed opposing views of a suitable program for A.K. for 2017-2018. (IHO Monk Dec. at 12) Plaintiffs' consultant concluded

that "AK with supplementary aids and supports would benefit from inclusion in classes within the district and make meaningful progress in the middle school that is a[s] close to his home as possible, specifically the Westhampton Beach Middle School, the school he would have attended if he did not have a disability." (IHO Monk Dec. at 12.) The District's consultant recommended "AK's placement in a neighboring school district that possessed a life skills program within a small class placement, allowing the student to be in a building with typical students in an instructional group with peers with similar needs." (IHO Monk Dec. at 12.) The District's consultant specifically found that Westhampton "did not currently have available special education classes and instructional groupings that would be able to accommodate AK." (IHO Monk Dec. at 12.)

Finding no FAPE violation for the 2016-2017 and 2017-2018 school years, IHO Monk concluded that the May 31, 2017 IEP developed by the CSE was reasonably calculated to enable A.K. to receive educational benefits.[6] (IHO Monk Dec. at 13-14.) He stated that the IEP needs to be adopted and implemented "in a setting outside the district that provides for a program that can best serve to meet AK's needs with all the supplementary aides and

---

[6] Ultimately, the CSE recommended that the least restrictive environment ("LRE") for A.K. would be either an 8:1:1 or 12:1:1 special class. (SRO Krolak Dec., Defs. Mot. Ex. D, D.E. 60-5 at 24.)

services." (IHO Monk Dec. at 14.) IHO Monk further found no evidence of any violation of the Parents' right to participate in the decision-making process. He did note, however, that the Parents' threats[7] to CSE members prior to the June 20, 2017 CSE meeting "was clearly NOT in their child's best interests and resulted in key participants refusing to attend and thus preventing the CSE from finalizing a 2017-2018 placement decision." (IHO Monk Dec. at 7.) The June 20, 2017 CSE meeting failed to result in a placement recommendation for the 2017-2018 school year, as Plaintiffs ended the meeting with no objection from the District and no follow-up meeting was planned. (IHO Monk Dec. at 11.)

IHO Monk noted that there was no disagreement about what constituted the LRE for A.K., as both parties expressed their willingness to accept placement in either a 12:1:1 or 8:1:1 setting. (IHO Monk Dec. at 11.) However, the Parents were insistent that such program must be offered in-district, even if A.K. were the only student in class. (IHO Monk Dec. at 11.) IHO Monk found that Plaintiffs' preferred in-district placement for A.K. was not the LRE and concluded that Westhampton was not required to create a program suitable for A.K.'s needs. (IHO Monk

---

[7] Plaintiffs sent warning letters to CSE members, stating that "[i]f you attend or participate in this illegally convened CSE meeting, you will undoubtedly become entangled in outstanding State and Federal litigation. As such, please take measure of the foregoing advisement." (IHO Monk Dec. at 7.)

Dec. at 16.)   IHO Monk ordered the parties to "complete the placement process for 2017-2018" and ordered the CSE "to canvas out of district programs and offer [A.K.] an appropriate program that fulfills the requirements of the Draft IEP of [May 31, 2017]." (IHO Monk Dec. at 17)  "The parents' insistence on an in-district program and placement are not a viable alternative for the 2017-2018 school year and should NOT be a consideration for placement by the CSE."  (IHO Monk Dec. at 17.)

D.  SRO Krolak Decision

Plaintiffs appealed IHO Monk's decision to SRO Krolak, who modified the decision by order dated October 18, 2017.  (SACC ¶ 38; SRO Krolak Dec.)  The SRO framed the sole issue presented for review as "the parent's allegation that the district has a duty to meaningfully analyze and make a good faith attempt to implement the student's educational goals within the district before placing the student in an out of district placement, and that the district failed to do so."  (SRO Krolak Dec. at 12.)  SRO Krolak noted that the Plaintiffs did not appeal "a number of findings of the IHO,  including the IHO's finding that the parent agreed with the evaluations and goals on the district IEPs, that the parties agreed on the size and structure of the program for the student, and that the parent's warning to the CSE members prior to the June 2017 CSE meeting resulted in participants refusing to

attend and prevented the CSE from finalizing the student's IEP for the 2017-18 school year." (SRO Krolak Dec. at 12.)

The SRO determined that the recommendations made by the April and May 2017 CSEs provided A.K. with a FAPE in the LRE. (SRO Krolak Dec. at 26) The SRO noted that while the Parents alleged on appeal that they never requested a specific placement, a review of the record "makes it abundantly clear that both of the student's parents have expressed a strong preference (if not an absolute insistence) that the student be educated within the district." (SRO Krolak Dec. at 26)

The SRO found that the record demonstrates that the District did not have an 8:1:1 or 12:1:1 special class program in place at the time of the CSE meetings at issue, requiring placement outside the district. (SRO Krolak Dec. at 27.) He noted that Westhampton attempted to provide Plaintiffs with two options for out-of-district placements that were capable of implementing the special class placement recommended on the student's IEP for the 2017-18 school year. (SRO Krolak Dec. at 27.) However, "[r]ather than investigate the out of district options, the parent[s] sent a letter to each CSE participant warning them not to attend" the June 2017 CSE meeting. (SRO Krolak Dec. 28.) The result was that several invited CSE participants declined to attend the CSE meeting, including all representatives from neighboring school districts and the school psychologist, who claimed to feel

"threatened" by the letter. (SRO Krolak Dec. 28.) Despite the lack of attendance at the June 2017 CSE meeting, the CSE undertook a comprehensive review and determined that A.K. required a special class, which was not currently available in the District, "and therefore an 'other arrangement' was required." (SRO Krolak Dec. at 28.)

The SRO concluded that Westhampton did not deny A.K. a FAPE by recommending a special class placement and attempting to locate one in a neighboring school district. (SRO Krolak Dec. at 28.) However, the SRO found that

> "the district is not absolved of its obligation to continue to attempt to educate [A.K.] in the school he would have attended if not disabled unless [his] IEP requires some other arrangement. While at the time of the hearing in this matter, placement in the district was not a viable option, this may not always be the case, thus, a directive that required placement of the student outside of the district schools would impede the important statutory purpose of attempting, whenever possible, to have disabled students access the public school system through placement in a public school with their nondisabled peers."

(SRO Krolak Dec. at 28-29.) Therefore, the SRO overturned the portion of the IHO's order that "direct[ed] that when the CSE reconvenes to recommend an appropriate placement for [A.K.], the CSE should not consider placement of [A.K.] in the district." (SRO Krolak Dec. at 29.) However, the SRO concluded that the District provided a meaningful, good-faith review and analysis "of whether

it could provide an appropriate education for [A.K.] within the district, and upon determining that it could not, permissibly recommended a small class placement in a public general education school in a neighboring school district, which offered [A.K.] a FAPE in the LRE." (SRO Krolak at 29.)

## II. Procedural History

Plaintiffs initially filed a Complaint against Defendants on February 16, 2017. (See Compl., D.E. 1.) Following the consolidation of this case with another case filed by Plaintiffs against Defendants on February 16, 2018, Plaintiffs filed an Amended Consolidated Complaint ("ACC") on March 30, 2018. (See ACC, D.E. 28.) Shortly thereafter, the previously assigned judge recused, and the consolidated action was reassigned to the undersigned. On August 15, 2018, the instant SACC was filed, alleging claims pursuant to (1) the IDEA, (2) the ADA, (3) Section 1983, and (4) Section 504. The SACC also (5) appeals the 2017 administrative decisions of IHO Monk and SRO Krolak, (6) seeks an equitable order directing Defendants to enroll A.K. and to utilize an inclusion consultant to design A.K.'s IEP for implementation in the District, and (7) appeals the July 11, 2018 SRO decision. (See SACC.)

On September 18, 2018, the Court granted Defendants leave to move for judgment on the pleadings on the first, second, third, fourth and sixth causes of action in the SACC, and granted

the Plaintiffs leave to move for partial summary judgment on the
first, second, third, and fourth causes of action in the SACC.
(See Sept. 18, 2018 Elec. Order.)  On December 6, 2018, Defendants
filed their motion for partial judgment on the pleadings (see Defs.
Mot.), and on December 10, 2018, Plaintiffs filed a motion for
partial summary judgment (see Pls. Mot.).  On January 4, 2019
Plaintiffs filed an opposition to Defendants' motion (Pls. Opp.,
D.E. 63), and Defendants filed an opposition to Plaintiffs' motion
(Defs. Opp., D.E. 64).  On January 17, 2019, Defendants filed a
reply in support of their motion for partial dismissal of the SACC
(Defs. Reply, D.E. 65), and on January 18, 2019, Plaintiffs filed
a reply to Defendants' motion for partial summary judgment (Pls.
Reply, D.E. 66).

DISCUSSION

I.   Legal Standards of Review[8]

     A. Federal Rule 12(c)

          The standard for a motion for judgment on the pleadings
is the same standard applicable to motions to dismiss under Rule
12(b)(6).  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429
(2d Cir. 2011).  To survive the motion, a plaintiff must plead
sufficient factual allegations in the complaint to "state a claim

---

[8] Initially, the Court will apply the 12(c) and 12(b)(1)
standards.  To the extent any claim survives dismissal under
these standards, in analyzing Plaintiffs' motion, the Court will
proceed with the summary judgment standard.

[for] relief that is plausible on its face." Bell Atlantic Corp.
v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.
2d 929, 949 (2007). The complaint does not need "detailed factual
allegations," but the standard demands "more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do." Id. at 555. In addition, the facts
pleaded in the complaint "must be enough to raise a right to relief
above the speculative level." Id. Determining whether a plaintiff
has met his burden is "'a context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting
Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173
L. Ed.2d 868 (2009)). "'Threadbare recitals of the elements of
a cause of action, supported by mere conclusory statements, do not
suffice.'" Id. (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. at
1949).

B. Federal Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter
jurisdiction under Rule 12(b)(1) when the district court lacks the
statutory or constitutional power to adjudicate it." Makarova v.
United States, 201 F.3d 110, 113 (2d Cir. 2000). The Court is
required to determine whether it possesses subject matter
jurisdiction prior to deciding a case. Wynn v. AC Rochester, 273
F.3d 153, 157 (2d Cir. 2001). Accord Morrison v. Nat'l Austl.

Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry . . . .") (internal quotation marks and citation omitted). The plaintiff bears the burden of establishing that subject matter exists by a preponderance of the evidence. Makarova, 201 F.3d at 113.

      C. Federal Rule 56(a)

        Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

        "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). A genuine factual issue

exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256, 106 S. Ct. at 2514). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citation omitted); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.") (citations omitted).

Because Plaintiff is litigating pro se, the Court reads his Complaint liberally, see, e.g., Mancuso v. Hynes, 379 F. App'x 60, 61 (2d Cir. 2010), and interprets his papers to "raise the strongest arguments that they suggest." Corcoran v. N.Y. Power Auth., 202 F.3d 530, 536 (2d Cir. 1999) (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)).

## II.  Alleged IDEA Violations

Plaintiffs allege that Defendants violated the IDEA by: (a) predetermining that the post-elementary education of A.K. be outsourced; (b) recommending that A.K. be placed in an educational

setting outside the LRE; and (c) failing to consider whether A.K.'s IEP can be satisfied in-district. (SACC ¶¶ 226-59). Plaintiffs argue that based on IHO Lederman's finding that Defendants' failed to provide A.K. with a FAPE for the 2015-2016 and 2016-2017 school years, they are entitled to summary judgment for at least two years of compensatory education, compensatory damages, and punitive damages.[9] (SACC ¶ 256-59; Pls. Mem. of Law, D.E. 62-2, at 9; Pls. Opp., at 11.)

Defendants assert that this Court lacks subject matter jurisdiction to enforce favorable administrative decisions under the IDEA, and therefore, Plaintiffs' IDEA claims should be dismissed. (Defs. Mem. of Law, D.E. 60-1, at 2-3.) Defendants also contend that because Plaintiffs failed to seek compensatory education services in their administrative due process complaint, this Court has no subject matter jurisdiction to grant Plaintiffs the requested relief. (Defs. Mem. of Law at 3-4.) As discussed more fully below, because this Court finds it lacks subject matter

---

[9] Though Plaintiffs' SACC seeks compensatory and punitive damages, in their memorandum in opposition to Defendants' motion for partial dismissal, Plaintiffs state: "Plaintiffs are not seeking monetary damages for Defendants' violations of the IDEA, as Defendants claim, but rather for Defendants' violations of the ADA, 504, and 1983." (Pls. Opp. at 15, n.3.) In any event, the Court notes that monetary damages are not available under the IDEA. See Polera v. Bd. of Educ., 288 F.3d 478, 486 (2d Cir. 2002) ("The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy--as contrasted with reimbursement of expenses--is fundamentally inconsistent with this goal.")

jurisdiction over Plaintiffs' IDEA claims, Defendants' motion for judgment on the pleadings is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

A. IDEA Standard

A federal court's role in "'reviewing state educational decisions under the IDEA is circumscribed.'" T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) (quoting Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007)). In making its own decision on the preponderance of the evidence, the Court "'must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Id. (quoting A.C. ex rel. M.C. v. Bd. of Educ., 553 F.3d 165, 171 (2d Cir. 2009)). "Therefore, as the Supreme Court has concluded, courts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" Id. (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982)).

The Court also acknowledges that IDEA claims can often be resolved on summary judgment because, although the Court is empowered to hear new evidence if necessary, it has the benefit of the administrative record and it must afford a certain degree of deference to the administrative findings. See id. at 418. "Unlike

with an ordinary summary judgment motion, the existence of a disputed issue of material fact will not necessarily defeat a motion for summary judgment in the IDEA context." J.S. v. Scarsdale Union Free Sch. Dist., 826 F. Supp. 2d 635, 658 (S.D.N.Y. 2011) (citations omitted). "Instead, summary judgment in IDEA cases such as this is 'in substance an appeal from an administrative determination, not a summary judgment.'" Id. (quoting Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005)).

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, states receiving federal funds are required to comply with extensive procedural requirements to ensure that all children with disabilities receive a FAPE. Gagliardo, 489 F.3d at 107; Bd. of Educ. v. Rowley, 458 U.S. 176, 180-81, 102 S. Ct. 3034, 3037-38, 73 L. Ed. 2d 690 (1982).

"The particular educational needs of a disabled child and the services required to meet those needs must be set forth at least annually in a written [individualized education plan] IEP." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998) (citation omitted). "In New York, local committees on

special education ("CSEs") are responsible for determining whether a child should be classified as eligible for educational services under [the] IDEA and, if so, for developing an appropriate IEP for that child." <u>S.H. v. N.Y. City Dep't of Educ.</u>, No. 09-CV-6072, 2011 WL 609885, at *1 (S.D.N.Y. Feb. 18, 2011) (citing <u>Walczak</u>, 142 F.3d at 123).

"Parents who believe that their school district has failed to provide their child with a free appropriate public education ('FAPE')--due to an inadequate IEP or otherwise--may file a complaint with the state educational agency and request an impartial due process hearing before a hearing officer." <u>Id.</u> at *1 (citing <u>Walczak</u>, 142 F.3d at 123). Either party may appeal an adverse decision to the appropriate state agency. <u>Id.</u> "Only after these administrative remedies have been exhausted may an <u>aggrieved party</u> appeal to a federal or state court, which may then grant appropriate relief." <u>M.R. v. S. Orangetown Cent. Sch. Dist.</u>, 10-CV-1800, 2011 WL 6307563, at *12 (S.D.N.Y. Dec. 16, 2011) (citing 20 U.S.C. § 1415(i)(2)(A)) (emphasis added). "One of the matters that must be administratively exhausted in order to be reviewed in a federal court is the issue of remedies, including whether a child should receive compensatory education." <u>Id.</u> (citations omitted).

1. <u>Subject Matter Jurisdiction</u>

Defendants are correct that this Court lacks subject matter jurisdiction over Plaintiffs' IDEA claim to enforce

favorable administrative decisions.  Further, to the extent
Plaintiffs allege that they are entitled to appeal the IHO's denial
of compensatory education services, the Court has no subject matter
jurisdiction over this issue, as it was not raised in Plaintiffs'
administrative complaint.

Section 1415(i)(2)(A) of the IDEA provides that "'[a]ny
party aggrieved' by a final state administrative decision may
commence a civil action in a state or federal court."  A.T. v.
N.Y. Educ. Dep't, No. 98-CV-4166, 1998 WL 765371, at *6 (E.D.N.Y.
1998) (emphasis added).  "The Second Circuit has held that parties
seeking to enforce favorable decisions under the IDEA have 'neither
the responsibility nor the right to appeal the favorable decision
by the local hearing officer since they were not aggrieved by [her]
decision.'"  Id. (quoting Antkowiak ex rel. Antkowiak v. Ambach,
838 F.2d 635, 641 (2d Cir. 1988) cert. denied, 488 U.S. 850, 108
S. Ct. 133, 102 L. Ed. 2d 105 (1988).[10]  Where Plaintiffs do not
seek to "challenge . . . the state review officer's findings
against them, they are before the Court solely for the purpose of

---

[10] "Although § 1415(i)(2)(A) prevents plaintiffs from seeking to
enforce a favorable administrative decision, the Second Circuit
has ruled that an action may be brought under 42 U.S.C. § 1983
in order to remedy a violation of the IDEA."  (Id. at 7.)
(citing Mrs. W. v. Tirozzi, 832 F.2d 748, 755 (2d Cir. 1987)
(parents of disabled children allowed to bring a Section 1983
action based on alleged violations of the IDEA)).

enforcement, and cannot be characterized as aggrieved parties under the IDEA." Id. at 6.

Here, finding in favor of the Plaintiffs, IHO Lederman concluded that Defendants had denied A.K. a FAPE for the 2015-2016 and 2016-2017 school years. (IHO Lederman Dec. at 41.) As neither party appealed this specific finding, the IHO's findings and determinations on this issue became final and binding on both parties. (SRO Harrington Dec. at 5, n.4); see also Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (failure to exhaust administrative remedies available under the IDEA deprives the court of subject matter jurisdiction) (citations omitted). Thus, because Plaintiffs are now seeking to enforce a favorable administrative decision, they are not aggrieved parties as required by Section 1415(i)(2)(A) and are therefore precluded from bringing an IDEA claim. See A.T., 1998 WL 765371 at *7; McAdams v. Bd. of Educ. of Rocky Point Union Free Sch. Dist., 216 F. Supp. 2d 86, 93-94 (E.D.N.Y. 2002) (plaintiffs who are not aggrieved parties may not commence an action under the IDEA to enforce favorable SRO decision); Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, (2d Cir. 2007) (finding award of attorneys' fees on IDEA claim was improper where court had no subject matter jurisdiction) (citing McGinty v. New York, 251 F.3d 84, 100 (2d Cir. 2001) ("It . . . follows that where we lack

subject matter jurisdiction, we also lack jurisdiction to award attorney's fees.").

Additionally, this Court lacks subject matter jurisdiction over Plaintiffs' claim to compensatory education damages, as this relief was not raised in their administrative due process complaint, and therefore, the request for such relief was not properly before the IHO or the SRO.[11]  See J.M. v. Kingston City Sch. Dist., 14-CV-0542, 2015 WL 7432374, at *15-16 (N.D.N.Y. Nov. 23, 2015) (citing M.R., 2011 WL 6307563, at *12 ("One of the matters that must be administratively exhausted in order to be reviewed in a federal court is the issue of remedies, including whether a child should receive compensatory education.").)

The IDEA itself provides that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [due process] notice . . . unless the other party agrees otherwise."  20 U.S.C. § 1415(f)(3)(B); see A.M. ex rel. Y.N. v. N.Y. City Dep't of Educ., 964 F. Supp. 2d 270, 283 (S.D.N.Y. 2013)  ("Failure to exhaust the remedies provided in this review process, the Second Circuit has

---

[11] "'Compensatory education' is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education. An award of compensatory education is appropriate only for gross violations of the IDEA." M.R., 2011 WL 6307563, at *12, n.11 (quoting Somoza v. N.Y. City Dep't of Educ., 538 F.3d 106, 109 n.2 (2d Cir. 2008)) (citation omitted).

long held, deprives a federal court of subject-matter jurisdiction to consider the claim on appeal from the SRO.") (collecting cases); B.P. v. N.Y. City Dep't of Educ., 841 F. Supp. 2d 605, 611 (E.D.N.Y. 2012) ("The scope of the inquiry of the IHO, and therefore the SRO and this Court, is limited to matters either raised in the Plaintiffs' impartial hearing request or agreed to by Defendant."). Although the Second Circuit has found that this "waiver rule is not to be mechanically applied," C.F. ex rel. R.F. v. N.Y. City Dep't of Educ., 746 F.3d 68, 78 (2d Cir. 2014), "the majority of courts have held that issues not pleaded in the [due process complaint] to be outside of the scope of the district court's review." Y.A. v. N.Y. City Dep't of Educ., No. 15-CV-05790, 2016 WL 5811843, at *11 (S.D.N.Y. Sept. 21, 2016) (citations omitted).

Here, Plaintiffs failed to request compensatory education in their due process complaint, but instead, raised it for the first time in a post-hearing brief. (IHO Lederman Dec. at 55.) Thus, IHO Lederman found that this issue was not properly before her. (IHO Lederman Dec. at 55-56.) On appeal, SRO Harrington upheld the IHO's denial of compensatory education services on procedural grounds, finding that Plaintiffs failed to request such relief in their due process complaint notice as required by the IDEA. (SRO Harrington Dec. at 10 ("neither the May 2016 due process complaint notice nor the September 2016 due

process complaint notice included a request for compensatory education as a form of relief").) She also noted that even if the issue had been properly raised, A.K. would not be entitled to compensatory education as he "received his special education services in, arguably, the most supportive settings available" during the 2015-2016 and 2016-2017 school years. (SRO Harrington Dec. at 12-13.)

As "there is a statutory bar to the IHO considering issues not raised in the demand for a due process hearing, see 20 U.S.C. § 1415(f)(3)(B), absent the district's or IHO's consent to a timely amendment," the Court declines to address Plaintiffs' claim for compensatory education. See M.R., 2011 WL 6307563, at *13 (finding no subject matter jurisdiction where plaintiffs failed to raise compensatory education in their due process complaint but added the request to their closing brief to the IHO).

Therefore, because Plaintiffs cannot seek to enforce a favorable administrative decision and because they have failed to exhaust their administrative remedies on their claim for compensatory education, this Court lacks subject matter jurisdiction over their IDEA claims.[12] Accordingly, Plaintiffs'

---

[12] The Court notes that to the extent Plaintiffs intend to raise claims of an IDEA violation against the individual defendants, those claims fail for the additional reason that the IDEA does not provide for individual liability. See Jenn-Ching Luo v. Baldwin Union Free Sch. Dist., No. 12-CV-3073, 2013 WL 1182232, at *3 (Mar. 21, 2013) (citation omitted).

motion for summary judgment on their IDEA claims against Defendants is DENIED and their IDEA claims are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(1).

III. Discrimination Claims

A. Res Judicata

At the outset, the Court addresses Plaintiffs' argument that IHO Lederman's unchallenged determination that Westhampton breached A.K.'s FAPE rights for the 2015-2016 and 2016-2017 academic years are "res judicata" and "law of the case" as to their ADA, Section 504, and Section 1983 claims. (SACC ¶ 256; Pls. Opp. at 13-14.) This contention is without merit.

"State law governs the preclusive effects in federal court of a state administrative agency's quasi-judicial findings." Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 45 (2d Cir. 2014) (citing Univ. of Tenn. v. Elliott, 478 U.S. 788, 796-99, 106 S. Ct. 3220, 3225-26, 92 L. Ed. 2d 635 (1986)). "'New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate.'" Id. (quoting Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist., 411 F.3d 306, 310 (2d Cir.), cert. denied, 546 U.S. 1062, 126 S. Ct. 801, 163 L. Ed. 2d 628 (2005). However, "[l]ike a prior judicial finding of fact, in order to have preclusive effect over a subsequent fact-finding or legal analysis, a prior administrative determination must have resolved

37

the identical issue, and the issue must have been actually and finally decided in the prior adjudication." Id. at 45, 49 (citation omitted) (finding no issue preclusion and explaining that "[t]he hearing officer's ultimate conclusion--that [plaintiff] had committed disciplinable misconduct and was incompetent--were guided by the particular legal framework and standards applicable in section 75 proceedings. The section 75 framework differs substantially from the legal framework for state and federal employment discrimination law applicable to [plaintiff's] federal jury trial.").

Here, as discussed supra, there were no administrative findings regarding Plaintiffs' discrimination claims. In fact, IHO Lederman specifically stated that "claims of violation of Section 504 of the Rehabilitation Act or the Americans with Disabilities Act (ADA) are not before me." (IHO Lederman Dec. at 32.) Therefore, the administrative findings that the District failed to provide A.K. with a FAPE under the IDEA have no preclusive effect on Plaintiffs' current discrimination claims, which were not before the administrative bodies. See K.C. v. Chappaqua Cent. Sch. Dist., No. 16-CV-3138, 2017 WL 2417019, at *7 (S.D.N.Y. June 1, 2017) (declining to give preclusive effect to IHO or SRO decision where plaintiffs' "Section 504 and ADA claims were not litigated before the IHO or SRO, and thus the

administrative proceeding did not "involve[ ] the same cause of action") (alteration in original).

B. <u>ADA and Section 504 Claims Against the District</u>

Plaintiffs bring discrimination claims under the ADA and Section 504 premised on A.K.'s deprivation of a FAPE and the District's alleged systemic violations of the IDEA. (SACC ¶¶ 260-81, 299-332.) These claims are properly before this Court, as they were raised before the IHO but were not decided.[13] (IHO Lederman Dec. at 32-33 ("[T]he Westhampton Beach district had declined to grant me as IHO authority to hear the discrimination complaint that was included in their due process complaints.")) For the reasons that follow, Plaintiffs have sufficiently pled discrimination claims pursuant to the ADA and Section 504, and therefore, the District's motion for partial dismissal of these claims is DENIED.

While the IDEA addresses "incorrect or erroneous special education treatments," both "the ADA and Section 504 address discrimination against disabled students." <u>Scaggs v. N.Y. Dep't</u>

---

[13] Though absent from the SACC, in their briefing, Plaintiffs appear to assert retaliation claims pursuant to the ADA and Section 504. (<u>See</u> Pls. Mem. of Law at 10; Pls. Opp. at 15-18, 24.) However, as the record shows that claims of retaliation were not raised before the IHO or SRO, such claims were not administratively exhausted and therefore are not properly before this Court. <u>See</u> <u>M.A. v. N.Y. Dep't of Educ.</u>, 1 F. Supp. 3d 125, 145-46 (S.D.N.Y. 2014) (finding retaliation claim unexhausted where plaintiffs did not argue issue before the IHO or SRO).

of Educ., No. 06-CV-0799, 2007 WL 1456221, at *15 (E.D.N.Y. May 16, 2007).  As the standards are generally the same under either the ADA or Section 504, courts treat claims under the two statutes identically.  Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003); see also Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").  To make out a prima facie case under the ADA or Section 504, a plaintiff must show "(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent statute]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability."  Harris v. Mills, 572 F.3d 66, 73-74 (2d Cir. 2009) (internal quotation marks and citation omitted).

A violation of the IDEA, without more, is insufficient to support a claim of disability-based discrimination under the ADA or Section 504.  See French v. N.Y. State Dep't of Educ., 476 F. App'x 468, 472-72 (2d Cir. 2011) (a "fail[ure] to show that the alleged 'discrimination' is anything more than a rehashing of [the plaintiff's] allegation that the defendants failed to provide her with a FAPE" warrants dismissal of plaintiff's ADA and Section 504 claims.)  Rather, where a plaintiff asserts denial of a FAPE, there

must be evidence that the school district acted with "'deliberate or reckless indifference to the student's federally protected rights" or with "bad faith or gross misjudgment.'" Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist., No. 07-CV-8828, 2013 WL 3929630, at *11 (S.D.N.Y. July 30, 2013) (quoting Schreiber v. E. Ramapo Cent. Sch. Dist., 700 F. Supp. 2d 529, 564 (S.D.N.Y. 2010) (citing Bartlett v. N.Y. State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998) (noting that intentional discrimination under Section 504 may be inferred from "at least deliberate indifference to the strong likelihood that a violation of federally protected rights will" occur), vacated on other grounds, 527 U.S. 1031, 119 S. Ct. 2388, 144 L. Ed. 2d 790 (1999). Even where Plaintiffs allege systemic IDEA violations, bad faith or gross misjudgment is required. S.W. by J.W. v. Warren, 528 F. Supp. 2d 282, 290 (S.D.N.Y. 2007) ("[P]laintiffs can rely on Section 504 to claim they are denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive, if they can show that Defendants acted with bad faith or gross misjudgment in the administration of disability services").

Here, the parties do not dispute that A.K. is disabled under the terms of the ADA and Section 504 or that the District is covered by these statutes. The only question is whether Defendants denied A.K.'s placement in the District because of his disability,

and in so doing, acted with "deliberate or reckless indifference" or "bad faith" or "gross misjudgment."

Plaintiffs allege that the District "pre-determine[s] to outsource its own special needs students, like [A.K.], without any meaningful analysis as to whether it could educate the student in district," (SACC ¶ 266), and that "Westhampton has created a bifurcated system of treatment between 'typical' children and 'special education' children, like [A.K.]" (SACC ¶ 264). They allege that "Defendants' actions are willful, intentional, reckless and evidence a callous indifference to [A.K.] and his rights." (SACC ¶ 279.)

While the above allegations from the SACC are merely conclusory, viewing the evidence incorporated into the SACC in the light most favorable to Plaintiffs, the Court finds that they have sufficiently pled the "deliberate or reckless indifference" or "bad faith or gross misjudgment" necessary for their ADA and Section 504 claims against the District. Notably, IHO Lederman found that Westhampton had never reviewed its ability to educate A.K. in-district before it "outsourced" him to another district. (IHO Lederman Dec. at 53.) "[T]he district never considered the possibility, rejecting it outright even before it ever saw a single piece of paper regarding A.K." (IHO Lederman Dec. at 53.) IHO Lederman further noted that the District's September 2016 CSE meeting "did little more than satisfy the basic requirement that

a meeting be held." (IHO Lederman Dec. at 38.) "[The District] conducted what could only be described as a cursory CSE meeting, without representation from either Remsenburg [ ] or Eastport [ ], adopting the earlier IEP from Remsenburg with no further investigation of other possibilities for AK's placement." (IHO Lederman Dec. at 36-37.) "In making its recommendation, the CSE did not consider the full range of possible placement to meet AK's needs." (IHO Lederman Dec. at 43.)

Though as described above, IHO Lederman's findings are not entitled to preclusive effect, at this early stage of the litigation, "we can infer that plaintiffs may be able to show bad faith or gross misjudgment" sufficient to state claims under the ADA and Section 504. S.W. by J.W., 528 F. Supp. 2d at 291 (allegations "that defendants implemented policies which in effect limit[ed] the availability of services and thereby impede[d] the implementation of IEPs for preschoolers with autism" sufficient to withstand motion to dismiss for failure to state a claim under Section 504) (citing R.B. ex rel. L.B. v. Bd. of Educ. of N.Y., 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000) (denying motion to dismiss ADA and Section 504 claims where plaintiff alleged sufficient facts to support allegations of bad faith and gross misjudgment in denying his right to a FAPE, including defendant's failure to timely implement plaintiff's IEP); Gabel v. Bd. of Educ. of Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 334-37 (S.D.N.Y. 2005)

(denying summary judgment because issue of material fact remained as to whether school district's numerous errors in handling disabled student's placement rose to the level of gross negligence or reckless indifference).

Accordingly, the District's motion to dismiss with respect to Plaintiffs' ADA and Section 504 claims is DENIED. However, because the Court cannot resolve on the record before it whether Defendants acted with deliberate or reckless indifference or with bad faith or gross misjudgment, Plaintiffs' motion for partial summary judgment on their ADA and Section 504 claims is also DENIED, subject to reinstatement following discovery, if warranted.

C. ADA and Section 504 Claims Against Individual Defendants

"Individual defendants may not be held personally liable for alleged violations of the ADA or the Rehabilitation Act. Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits." Menes v. CUNY Univ. of N.Y., 92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000) (internal quotation marks and citations omitted); see also S.W. by J.W., 528 F. Supp. 2d at 298 (finding that individual defendants may not be held personally liable for alleged violations of the ADA, Section 504, or the IDEA); B.D.S. v. Southold Union Free Sch. Dist., 08-CV-1319, 2009 WL 1875942, at *21 (E.D.N.Y. June 24, 2009) (dismissing "official capacity" ADA and

Rehabilitation Act claims sua sponte with prejudice as redundant of claims against employer school district). Therefore, Plaintiffs' ADA and Section 504 claims against the individual Defendants are DISMISSED WITH PREJUDICE.

IV. Section 1983 Claims Against All Defendants

Plaintiffs assert Section 1983 claims based on Defendants' alleged IDEA violations, deprivations of A.K.'s rights to equal protection and due process under the Fourteenth Amendment, and discriminatory and retaliatory conduct. (SACC ¶¶ 282-98.) As discussed below, Plaintiffs fail to state a claim upon which relief can be granted against any of the Defendants, and therefore, their Section 1983 claims are DISMISSED.

Section 1983 provides a means of redress for constitutional violations by a person acting under color of state law. The statute states, in pertinent part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. "It is well-settled that [Section] 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423

F.3d 153, 159 (2d Cir. 2005). To state a claim under Section 1983, a plaintiff must allege: (1) that the defendant acted under color of state law and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of the United States. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999).

A. IDEA-Based Section 1983 Claims

Where an IDEA claim and a Section 1983 claim are brought simultaneously, a plaintiff must prove that a constitutional violation occurred "outside the scope of the IDEA." Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 930 F. Supp. 83, 102-03 (S.D.N.Y. 1996) (citing Bonar v. Ambach, 771 F.2d 14, 18 (2d Cir. 1985)). Plaintiffs cannot use Section 1983 to obtain damages for IDEA violations absent allegations that they were denied IDEA's "procedural safeguards or administrative remedies." Streck v. Bd. of Educ. of E. Greenbush Sch. Dist., 280 F. App'x 66, 68 (2d Cir. 2008) ("[P]laintiffs may not rely on § 1983 to pursue monetary damages for violations of the IDEA" where "they were afforded a hearing before an impartial hearing officer and review by a state review officer."); French v. N.Y. State Dep't of Educ., No. 04-CV-0434, 2010 WL 3909163, *11 (N.D.N.Y. Sept. 30, 2010) ("Plaintiff's complaint makes clear that the alleged section 1983 violations are merely a reiteration of his IDEA claims, as they

attack Defendant['s] alleged noncompliance with the IDEA and its effects on Plaintiff."), aff'd, 476 F. App'x 468 (2d Cir. 2011).

Here, the record reflects that Plaintiffs availed themselves of the IDEA's remedial procedures, as they were provided numerous hearings before IHOs, reviews by SROs, and ultimately, were awarded relief under the statute. Thus, Plaintiffs cannot now reiterate their IDEA claims in an effort to obtain monetary damages under Section 1983. Therefore, Plaintiffs' IDEA-based Section 1983 claim is DISMISSED WITH PREJUDICE as it fails to state a claim for which relief can be granted.

B. Fourteenth Amendment Based Section 1983 Claims

Plaintiffs also assert what the Court construes to be Section 1983 claims based on A.K.'s Fourteenth Amendment rights to equal protection and due process. The Court addresses each of these in turn.

1. Equal Protection Claim

The Equal Protection clause mandates that government agencies treat "all similarly situated people alike." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3253, 87 L. Ed. 2d 313 (1985)). While the typical equal protection claim involves "discrimination against people based on their membership in a vulnerable class," id., the Second Circuit and the Supreme Court have also recognized "'class

of one'" claims "'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  Id. (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000) (per curiam)).  The parties agree that this is the type of equal protection claim alleged by Plaintiffs.  (Defs. Mem. of Law at 19; Pls. Opp. at 21-23.)

     To prevail on a "class of one" claim, "'the plaintiff must point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are 'prima facie identical' in all other respects.'"  MB v. Islip Sch. Dist., No. 14-CV-4670, 2015 WL 3756875, at *10 (E.D.N.Y. June 16, 2015) (quoting Rinaldi v. City of N.Y., No. 13-CV-4881, 2014 WL 2579931, at *11 (S.D.N.Y. June 10, 2014), R&R adopted, No. 13-CV-4881, 2014 WL 4626076 (S.D.N.Y. Sept. 15, 2014).

     Here, there is no question that Plaintiffs have failed to plausibly allege that A.K. was treated differently from any similarly situated individual.  Rather, in wholly conclusory fashion, Plaintiffs allege that Defendants "reflexively outsource[ ] the post-elementary education of every single 'alternatively assessed' special education child like A.K. . . . Defendants have also displayed a unique and particularly offensive position towards A.K.  In refusing A.K.'s enrollment, A.K. became

the only child, including all special education children, to ever have his basic enrollment rights denied by Defendants." (Pls. Opp. at 23.) (emphasis omitted). Yet Plaintiffs fail to allege how any "alternatively assessed" child's circumstances are "prima facie identical" to A.K.'s or how A.K. was treated differently from any such child. See Camac v. Long Beach City Sch. Dist., No. 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (granting motion to dismiss equal protection claim where "[a]side from assigning [ ] unnamed students the title of 'similarly situated,' the [c]omplaint contain[ed] no other allegations showing how another person's circumstances . . . are prima facie identical to [plaintiff's]") (internal quotation marks and citation omitted; ellipsis in original). See also e.g., MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (dismissing plaintiffs' equal protection claim because the complaint failed to "identify any comparators or similarly situated entities at all"); Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist., 07-CV-8828, 2009 WL 3151200, at *7 (S.D.N.Y. Sept. 29, 2009) (granting motion to dismiss on "class of one" claim on the ground that "[p]laintiffs have not identified any 'similarly situated' person in their Second Amended Complaint who was treated differently from [p]laintiffs") (citing Talley v. Brentwood Union Free Sch. Dist., No. 08-CV-790, 2009 WL 1797627, at *8 (E.D.N.Y. June 24, 2009) (dismissing plaintiff's class of one equal

protection claim, in part, because "the absence of factual allegations of any similarly situated individual is fatal to [the] claim"). Thus, because Plaintiffs fail to identify any 'similarly situated' individual at all, much less one who was treated differently from A.K., Plaintiffs' equal protection claim is DISMISSED WITHOUT PREJUDICE.

### 2. Due Process Claim

Plaintiffs allege that they are entitled to compensatory and punitive damages pursuant to Section 1983 because Westhampton "peremptorily and summarily dismissed even the possibility of A.K. attending any of its classes by summarily denying A.K.'s enrollment, and then pre-determining that he must be outsourced, thereby denying him basic due process." (Pls. Mem. of Law at 13.) Plaintiffs, however, have not shown that Defendants deprived A.K. of a constitutionally protected interest.

"While the Supreme Court has recognized the protection of fundamental rights under the Fourteenth Amendment in the context of substantive due process and equal protection, it is well established [ ] that there is no fundamental right to education." Manbeck v. Katonah-Lewisboro Sch. Dist., 435 F. Supp. 2d 273, 276 n.2 (S.D.N.Y. 2006) (citing Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 458, 108 S. Ct. 2481, 2487, 101 L. Ed. 2d 399 (1988)). Thus, contrary to Plaintiffs' contention, "[t]he Fourteenth Amendment does not protect a public education as a substantive

fundamental right." <u>Handberry v. Thompson</u>, 446 F.3d 335, 352-53 (2d Cir. 2006) (citations omitted.) Accordingly, Plaintiffs' due process claim is DISMISSED WITH PREJUDICE.

## C. Discrimination-Based Section 1983 Claim

Plaintiffs allege that "Westhampton's systemic and discriminatory practice continues to deprive [A.K.] of the rights and privileges guaranteed to him by Section 1983." (SACC ¶ 287.) They further allege that Westhampton's retaliatory treatment of A.K. "stems from the fact that he is a student with Down Syndrome who has challenged Defendants' pre-determined practice of illegally outsourcing the education of 'alternatively assessed' students." (SACC ¶ 286.)

However, "the Second Circuit has made clear, '[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement.'" <u>Lener v. Hempstead Pub. Schs.</u>, 55 F. Supp. 3d 267, 281 (E.D.N.Y. Sept. 23, 2014) (quoting <u>Patterson v. Cty. of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004) (alterations in original)). "Freedom from discrimination on the basis of disability is a right secured by statute, <u>see</u> ADA, 42 U.S.C. §§ 12031 <u>et</u> <u>seq.</u>, not by the Constitution." <u>Id.</u> (citing <u>Fierro v. N.Y. City Dep't of Educ.</u>, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014). Thus, to the extent Plaintiffs' claim of disability discrimination and retaliation are based upon the rights provided by the ADA and Section 504, their

claim is not actionable under Section 1983.[14]  See EC ex rel. RC v. Cty. of Suffolk, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012) ("[T]he ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983."); Pape, 2009 WL 3151200, at *6 (granting motion to dismiss Section 1983 claim on ground that "[t]he broad discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that [Section 504] and the ADA are designed to protect against, not the Equal Protection Clause") (internal quotation marks and citation omitted; second alteration in original).  "Indeed, courts have held that the denial of equal access to public education for disabled students is precisely the type of alleged discrimination protected by statutory authority under the IDEA, Section 504, and the ADA."  Id. at *6 (citation omitted).  Thus, Plaintiffs' claim that A.K. was discriminated against on the basis of his disability is not actionable under Section 1983 and is therefore DISMISSED WITH PREJUDICE.

Accordingly, Plaintiffs' Section 1983 claims against all Defendants are DISMISSED in their entirety.

V.  Equitable Relief

---

[14] As discussed supra, the record indicates that claims of retaliation were not raised before the IHO or SRO, and therefore, such claims were not administratively exhausted and are not properly before this Court.  See M.A., 1 F. Supp. 3d at 145-46.

As a separate claim, Plaintiffs request that this Court intervene and "direct Defendants to enroll [A.K.] and to utilize an inclusion consultant to design [A.K.'s] IEP for implementation in Westhampton." (SACC ¶ 389.) Specifically, Plaintiffs contend that "Defendants continue to ignore IHO Lederman and SRO Krolak['s] directions to examine the ability to educate A.K. in District." (Pls. Opp. at 25.)

The Court finds that Plaintiffs' claim seeking equitable relief falls under the IDEA. As the Court has determined that it lacks subject matter jurisdiction over Plaintiffs' IDEA claim, it also lacks the ability to award the requested equitable relief. In any event, though Plaintiffs have a procedural right in the educational placement of their child and though the Court acknowledges the Parents' desire to have their son educated in their home district, it is well settled that the IDEA does not authorize parents to participate in school selection. See R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 191-92 (2d Cir. 2012) ("The Department may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP."); F.L. ex rel. F.L. v. N.Y. City Dep't of Educ., No. 11-CV-5131, 2012 WL 4891748, at *11 (S.D.N.Y. Oct. 16, 2012) ("Parents are entitled to participate in any decision regarding the educational placement of their child. Parents are not, however, procedurally entitled to participate in the decision regarding

school placement.") (citation omitted); T.Y., 584 F.3d at 419-20 ("Educational placement refers to the general educational program--such as the classes, individualized attention and additional services a child will receive--rather than the bricks and mortar of the specific school. . . . The parents' actions suggest that they seek a veto over school choice, rather than input--a power the IDEA clearly does not grant them.") (internal quotation marks omitted). Thus, even if this Court had subject matter jurisdiction over Plaintiffs' claim for equitable relief, Plaintiffs are not entitled to such relief.

Accordingly, Plaintiffs' request for equitable relief is DENIED and the claim is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is DENIED as to: (1) Plaintiffs' IDEA claim; (2) Plaintiffs' ADA claim; (3) Plaintiffs' Section 1983 claim; and (4) Plaintiffs' Section 504 claim. Defendants' motion to dismiss is GRANTED as to: (1) Plaintiffs' IDEA claim against all Defendants; (2) Plaintiffs' ADA claim against the individual Defendants; (3) Plaintiffs' Section 1983 claim against all Defendants; (4) Plaintiffs' Section 504 claim against the individual Defendants; and (6) Plaintiffs' request for equitable relief. Accordingly, Plaintiffs' ADA and Section 504 claims against the individual

Defendants are DISMISSED WITH PREJUDICE. Additionally, Plaintiffs' IDEA-based, due process-based, and discrimination-based Section 1983 claims against all Defendants are DISMISSED WITH PREJUDICE. Plaintiffs' IDEA claim and equal protection-based Section 1983 claims against all Defendants are DISMISSED WITHOUT PREJUDICE. Additionally, Plaintiffs' request for equitable relief is DISMISSED WITHOUT PREJUDICE.

Defendants' motion to dismiss is DENIED as to: (2) Plaintiffs' ADA claim against the District and (4) Plaintiffs' Section 504 claim against the District. Discovery shall proceed on Plaintiffs' second and fourth causes of action.

The parties did not move with respect to Plaintiffs' fifth and seventh causes of action--appeals of the 2017 and 2018 administrative decisions--and they survive this Memorandum and Order. Within fourteen (14) days of the date of this Memorandum and Order, the parties shall submit a joint status report regarding the fifth and seventh causes of action.

The Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiffs.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __27__, 2019
       Central Islip, New York