UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

A.K, a minor (CHRISTIAN KILLORAN,
as parent),

                Plaintiffs,

      -against-

WESTHAMPTON    BEACH    SCHOOL
DISTRICT,    MICHAEL    RADDAY-
SUPERINTENDENT,    SUZANNE    M.
MENSCH, HALSEY C. STEVENS, STACY
RUBIO, CLAIRE BEAN, JAMES N. HULME,
JOYCE DONNESSON, and GEORGE R. KAST,
JR. (individually and collectively as Board
of Education Members),

              Defendants.
------------------------------------------------------------------X

CHRISTIAN    KILLORAN    and    TERRIE
KILLORAN, individually and on behalf of their
infant son, A.K., a minor,

              Plaintiffs,

      -against-

WESTHAMPTON    BEACH    SCHOOL
DISTRICT, MICHAEL RADDAY (individually
and    in    his    official    capacity    as
SUPERINTENDENT),    SUZANNE    M.
MENSCH, HALSEY C. STEVENS, STACY
RUBIO, CLAIRE BEAN, JAMES N. HULME,
JOYCE DONNESSON, and GEORGE R.
KAST, JR. (individually and in their respective
official    capacities    as    Board    of    Education
Members),

              Defendants.
------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
17-cv-0866 (GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil rights litigation, on referral from the Honorable Gary R. Brown for Report and Recommendation are: (1) Defendants' Westhampton Beach School District ("Westhampton" or the "District"), Michael Radday, Suzanne M. Mensch, Halsey C. Stevens, Stacy Rubio, Claire Bean, James N. Hulme, Joyce Donnesson and George R. Kast, Jr. ("Individual Defendants," and collectively with the District, "Defendants") motion for summary judgment ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [137]; and (2) *pro se* Plaintiffs' Christian Killoran and Terrie Killoran (together, the "Parents"), individually and as parents to A.K., their child with Down's Syndrome (collectively, the "Plaintiffs") cross-motion for partial summary judgment ("Plaintiffs' Motion" or "Pl. Mot."). *See* DE [134]. Both motions are brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Def. Mot.; Pl. Mot.

By way of Complaint filed on February 16, 2017, as amended by an Amended Consolidated Complaint on March 30, 2018, and again by a Second Amended Consolidated Complaint on August 15, 2018, Plaintiffs commenced this action, alleging, against all Defendants, violations of: (1) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (3) 42 U.S.C. § 1983; and (4) Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794(a) *et seq. See* Complaint ("Compl."), DE [1]; Amended Consolidated Complaint ("ACC"), DE [28]; Second

Amended Consolidated Complaint ("SACC"), DE [52].[1]  Plaintiffs' SACC additionally: (5) appeals the 2017 administrative decisions of independent hearing officer ("IHO") James A. Monk ("IHO Monk") and state review officer ("SRO") Steven Krolak ("SRO Krolak"); (6) seeks an equitable order directing Defendants to enroll A.K. and to utilize an inclusion consultant to design A.K.'s Individualized Educational Plan ("IEP") for implementation within the District; and (7) appeals SRO Krolak's July 11, 2018 administrative decision. *See id.*  Defendants deny all liability.  *See* Defendants' Answer to the SACC ("Ans."), DE [59].  For the reasons set forth below, the Court respectfully recommends that:  (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; and (iii) the Second Amended Consolidated Complaint be dismissed with prejudice and without leave to replead.

## I.  BACKGROUND

### A.  The Parties

The following facts are taken from the parties' pleadings, declarations, exhibits and Local Rule 56.1 statements and, except where indicated, are not in dispute.

Plaintiffs are residents of the Remsenburg-Speonk Union Free School District ("Remsenburg"), which provides educational services through sixth grade.  *See* Defendants' Rule 56.1 Statement ("Def. 56.1"), DE [137-1], ¶ 1.  A.K. has Down's Syndrome, and the associated intellectual and physical limitations.  *Id.* at ¶ 3.  In some cases, students with needs similar to A.K.'s attend specialized schools, which

---

[1] While Plaintiffs are currently proceeding *pro se*, they were represented by retained counsel from January 16, 2018 until June 29, 2020. *See* DEs [18], [100], [101], [107]. The Court permitted counsel to withdraw due to a breakdown of the attorney-client relationship. *See* DEs [100], [101], [107].

are better equipped to educate students with intellectual and physical disabilities. *Id.* at ¶ 5. The Parents, however, strongly desired for A.K. to be "mainstreamed" – placed in a classroom with students without physical or intellectual disabilities – and not placed in a classroom with other disabled students. *Id.* at ¶ 6.

A.K. attended elementary school, completing the sixth grade in 2015 in his home school district, Remsenburg. *See* January 26, 2017 Decision of IHO Nancy M. Lederman ("Lederman Dec."), DE [43-14], at 4. In fifth and sixth grade, A.K. "received instruction in an integrated co-teaching class (ICT), educated with disabled and non-disabled peers. [A.K.] also received the support of a 1:1 aide, as well as related services of speech and language therapy, occupational therapy, and physical therapy." *Id.*[2]

B. **Plaintiffs' Efforts to Educate A.K. at Westhampton**

Remsenburg, which offers instruction only through the sixth grade, contracts with Westhampton and Eastport-South Manor School District ("Eastport") to act as receiving school districts for Remsenburg students in seventh grade through high school, and students go to one district or the other. *See* Def. 56.1 ¶ 2. Plaintiffs allege that pursuant to the contract between Westhampton and Remsenburg, Westhampton was obligated to enroll A.K. as a student, *see* Plaintiffs' Rule 56.1 Statement of Fact(s), ("Pl. 56.1"), DE [134-2], ¶ 13, which Defendants deny. *See generally* Def. 56.1. According to Plaintiffs, the Parents reached out to Westhampton Beach Middle

---

[2] In third and fourth grade, A.K. had been enrolled in an 8:1:1 (8 students, 1 teacher, and 1 teaching assistant) class in the Center Moriches school district but returned to Remsenburg for fifth and sixth grade. *See* Lederman Dec. at 4.

School ("Westhampton MS") as early as 2013 expressing their interest in sending A.K. there upon his completion of sixth grade. *See* Lederman Dec. at 6.

Plaintiffs stressed that it was important for A.K to be educated in Westhampton MS so he could attend the school that his siblings would be attending and maintain his friendships as he transitioned out of elementary school. *Id.* at 7. During A.K.'s sixth-grade year, Remsenburg developed an initial individualized education program ("IEP") for A.K. for the upcoming 2015-2016 school year that recommended placement in an 8:1:1 program at Eastport. *Id.* at 8. Upon A.K.'s June 2015 graduation from elementary school, however, he chose to attend Westhampton MS. *See* Pl. 56.1 ¶ 19. Plaintiffs allege that Westhampton refused to enroll A.K. or to convene a Committee on Special Education ("CSE") to determine his IEP. *See id.* As a result, Plaintiffs challenged Remsenburg's initial IEP by filing an administrative complaint against the school. *See* Plaintiffs' Rule 56.1 Counter Statement ("Pl. Counter-56.1"), DE [134-2], ¶ 13. In accordance with a stipulation of settlement ("Stipulation") executed July 16, 2015 by Remsenburg and Plaintiffs, A.K.'s IEP was amended to recommend the following special services: (i) a 15:1:1 self-contained class placement; (ii) a resource room in a 3:1:1 setting, five times per week for forty minutes; (iii) a 1:1 teaching assistant for six hours and thirty minutes per day; (iv) a consultant for integration for sixty hours over the school year to consult with staff on curriculum, behavior, and program development; and (v) the related services of speech language therapy, physical therapy, and occupational therapy. *See* Lederman Dec. at 8.

### C. **Westhampton's Initial Refusal to Enroll A.K.**

The Stipulation further required Remsenburg to submit a letter to Westhampton, which was not a party to the Stipulation, requesting that it implement the outlined program at Westhampton MS. *Id.* at 9. In accordance with the Stipulation, on July 9, 2015, a lawyer for Remsenburg wrote a letter to Westhampton's attorney setting forth the above changes to A.K.'s IEP and stating that "[Remsenburg] believes that Westhampton is able to implement the referenced program." *Id.* Westhampton denied the request and refused to admit A.K., stating that the District was not "in a position to accommodate the severely intellectually disabled child in a 15:1:1 class that possesses Regents-track students being administered the State's intensive core curriculum." *Id.* On August 13, 2015, Plaintiffs filed a federal action in this Court against the Westhampton Board of Education seeking injunctive relief directing it to permit A.K. to attend Westhampton MS for the 2015-2016 academic year. *See C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 323 (E.D.N.Y. 2016). On December 18, 2015, Plaintiffs amended their complaint by adding claims of discrimination under the IDEA, the ADA, Section 504, and Section 1983. *Id.* at 323. On May 9, 2016, Judge Arthur D. Spatt dismissed the amended complaint without prejudice for lack of subject matter jurisdiction for Plaintiffs' failure to exhaust their claims at the administrative level under the IDEA. *Id.* at 324. Subsequently, on May 10, 2016, Plaintiffs filed their initial administrative due process complaint against Westhampton seeking an impartial hearing regarding the 2015-2016 and 2016-2017

school years. *See* Pl. 56.1 ¶ 2. A hearing was held before IHO Nancy M. Lederman ("IHO Lederman"), and on June 4, 2016, the District's motion to dismiss the due process complaint was granted. *See* Lederman Dec. at 1-2.

However, on July 11, 2016, an unnamed SRO issued a decision vacating the dismissal of the case, and the matter was consolidated before a different IHO in a pending proceeding Plaintiffs had filed against Remsenburg. *See* Lederman Dec. at 2. At the direction of the IHO, in September 2016, Westhampton enrolled A.K. and convened a CSE. The CSE issued a recommendation for A.K. to be placed in an 8:1:1 program within Eastport for the 2016-2017 school year. *See* Lederman Dec. at 22. On September 27, 2016, Plaintiffs filed another due process complaint against Westhampton challenging the District's recommendation for A.K.'s program and placement for the 2016-2017 school year. *Id.* at 2. On October 11, 2016, IHO Lederman consolidated this matter with the due process complaints that were already pending before her. *Id.* at 2.

### D. **IHO Lederman's January 26, 2017 Decision and Subsequent District Actions**

On October 14, 2016, IHO Lederman conducted an impartial hearing on Plaintiffs' due process complaint. *See id.* at 3. The hearing continued on October 17, November 10 and November 14, 2016. At the November 10, 2016 session, the Parents withdrew all complaints against Remsenburg. *See id.* In her January 26, 2017 decision, IHO Lederman directed Westhampton to formally enroll A.K within the District and assume responsibility for convening a Committee on Special Education ("CSE") in order to provide an appropriate placement for him, which the District

agreed to do. *See* August 15, 2017 Decision of IHO James A. Monk ("Monk Dec."), DE [43-4], at 3. IHO Lederman further directed the District to retain a "qualified consultant on inclusion" to advise and report to the District on inclusion for A.K. at the middle school level. *See id.*

Westhampton retained two consultants: the District chose one consultant, Victoria Regan ("Regan"), and the Parents chose the other, Kathleen Feeley ("Feeley"). *See id.* IHO Lederman charged both consultants with reviewing A.K.'s education record and examining instructional programs and curricula available in the District to assess whether supplementary aids and supports would allow him to benefit from inclusion in any classes within the District, and to make recommendations in accordance with the results of their review, and both consultants complied. *See id.* at 4. The consultants were permitted to, and did, examine instructional programs in other districts to assess whether supplementary aids and supports would allow A.K. to benefit from inclusion in available classes, and to make recommendations in accordance with their results. *See id.*

IHO Lederman instructed the District to convene a CSE to develop an IEP and provide an appropriate placement for A.K. within ten days of receiving the consultants' reports. *See id.* at 4. IHO Lederman directed that the CSE receive and consider these reports, as well as invite the consultants to the CSE meeting to report orally on their findings, and include such results and recommendations of their reports on A.K.'s IEP. *See id.* Finally, IHO Lederman concluded that, to the extent inclusion in a general education or less restrictive self-contained class was not

8

recommended by the CSE, placement was to be in a class with students with similar needs and not in a class with "mostly non verbal students," and that if the District intended to place A.K. out-of-District, the CSE was to invite to its meeting representatives from the agency or district to discuss A.K.'s needs and how such a program would address them, memorializing such information on A.K.'s IEP. *See id.* at 4-5. None of these events occurred prior to the hearing before IHO Monk, whose decision is one of the subjects of this litigation.

### E. SRO Harrington's March 23, 2017 Decision

Though Defendants did not appeal the IHO's determination that they denied A.K. access to a free and appropriate education ("FAPE"), Plaintiffs appealed portions of her order to SRO Sarah L. Harrington ("SRO Harrington"). Specifically, Plaintiffs argued that IHO Lederman erred in denying their request for "compensatory damages." *See* Pl. 56.1 at 4-5. On March 23, 2017, SRO Harrington dismissed Plaintiffs' appeal. *See* March 23, 2017 Decision of SRO Harrington ("Harrington Dec."), DE [60-3]. Specifically, SRO Harrington upheld IHO Lederman's denial of compensatory education services, finding that Plaintiffs failed to request such relief in their due process complaint notice as required by the IDEA, raising it for the first time in their closing brief to the IHO. *Id.* at 12-13. The SRO did note, however, that the IHO should not have considered the "appropriateness of the [Plaintiffs'] decision to maintain [A.K.] in his pendency placements[3] for the duration of the administrative

---

[3] For the duration of the administrative hearings at issue, the District's CSE recommended that A.K. receive "Home Tutoring" and that all appropriate "related services" required in his IEP be provided either at home or in the District. This placement was identified as A.K.'s "pendency placement" throughout the course of litigation. *See* Monk Dec. at 5.

proceedings" in relation to their request for compensatory education. *Id.* at 12. Ultimately, the SRO upheld the IHO's denial of compensatory education, finding that A.K. did receive his special education services in "arguably, the most supportive and intensive settings available" for the 2015-16 and 2016-17 school years. *Id.* at 13. The SRO acknowledged that "while a district remains obligated to consider distance from home as one factor in determining the school in which a student's IEP will be implemented, this provision does not confer an absolute right or impose a presumption that a student's IEP will be implemented in the school closest to his or her home or in in his or her neighborhood school." *Id.* at 15. The next set of administrative decisions results from Plaintiffs' issues with Westhampton's implementation of IHO Lederman's directives.

### F. IHO Monk's August 15, 2017 Decision

In accordance with IHO Lederman's order, the District's CSE reconvened to review any possible in-district programs for A.K., as well as to hear both experts' recommendations and reach out to neighboring school districts to ascertain whether they could accommodate A.K.'s needs for the 2016-2017 school year. *See* Monk Dec. at 3-5. On April 19, 2017, the Parents filed a due process complaint alleging that Westhampton violated A.K.'s rights under the IDEA to a FAPE for the 2016-2017 school year as a result of the CSE's actions and recommendations. *See* October 18, 2017 decision of SRO Steven Krolak ("2017 Krolak Dec."), DE [43-3], at 4. After additional CSE meetings in May 2017, the Parents filed a second, consolidated due process complaint, adding claims that:

> [T]he CSE chairperson recommended an educational placement which she was not familiar with and that was unnecessarily restrictive, the CSE chairperson recommended that placement without exploring the possibility of implementing the student's lEP goals within the district, and the CSE was improperly composed because it failed to include a representative from the recommended placement....

*Id.* at 5.

An impartial hearing on Plaintiffs' consolidated due process complaint before IHO Monk commenced on June 15, 2017 and concluded on June 22, 2017. IHO Monk noted that no party took exception to A.K.'s classification for the 2016-2017 and 2017-2018 school years, as all believed the classification recommendations were appropriate to address his disabilities.

Plaintiffs urged IHO Monk to issue an order compelling Westhampton to attempt in "good faith" to implement A.K.'s IEP goals "within district," as Plaintiffs argued that in-District education would be the least restrictive learning environment ("LRE"), and that implementing A.K.'s IEP in the District was "entirely possible." *See id.* at 6-7. Further, the Parents alleged that without an order from IHO Monk compelling Westhampton to educate A.K. within the District, Westhampton would "continue to defy its legal obligations." *Id.* at 7.

In upholding Westhampton's recommendation to educate A.K. out-of-District, IHO Monk reviewed the extensive administrative record before him, and reasoned that, because the parties did not disagree on the size or structure of the program for A.K., they did not disagree as to what constituted an LRE for A.K. *See id.* at 11. He analyzed the two consultants' opposing recommendations as to A.K.'s placement after their examinations. *See id.* at 11-12. Feeley, the Parents' consultant, concluded that

11

A.K. would benefit from inclusion in classes within the District, with supplementary aids and supports, and would make "meaningful progress" attending school as close to home as possible.  *See id.* at 12.  Regan, Westhampton's consultant, reviewed District records as to A.K., observed him within the in-District setting where he received related services as well as during his home instruction, visited District classes, reviewed class profiles and curricular materials and visited neighboring districts to review their curricula, content and class profiles as to those districts' programs.  *See id.*  Regan recommended placing A.K. in a neighboring district with a life skills program and a small class placement, thereby allowing A.K. to be in a building with typical students and in an instructional group with peers with similar needs.  *See id.*  Regan further concluded, and IHO Monk agreed, that Westhampton did not currently have available special educational classes and instructional groupings that could accommodate A.K.  *See id.*

IHO Monk ultimately concluded that Westhampton did not deny A.K. a FAPE. *See id.* at 14-16.  He noted that "[p]lacement within the district, although a legitimate concern of parents that a child attend school with other neighborhood children, has been held to be a concern beyond the educational benefit inquiry made under IDEA." *Id.* at 15.  Based on the record, IHO Monk determined that an LRE could not be implemented within a regular educational classroom for A.K.  *See id.*  Finally, IHO Monk explained, "Westhampton Beach is not required to create a program, but it is required to examine whether A.K.'s needs can be met within a district class with

supplementary aids and services. I feel that they have taken on this examination and made a well informed determination." *Id.* at 16.

In concluding that the District sustained its burden to demonstrate that it was prepared to provide a FAPE for the challenged school years, IHO Monk noted that: (1) A.K. would have made progress had he attended the recommended out-of-District placement; (2) the Parents' preferred in-District placement is not the LRE; and (3) the testimony and information in the administrative record did not demonstrate a reasonable accommodation Westhampton could have made, nor how A.K.'s academic deficits could have been addressed in-District, as his "inability to function in a mainstream setting has been well established." *Id.* at 16. IHO Monk directed the parties to complete the placement process for 2017-2018, and the CSE to canvas out-of-District programs so as to offer A.K. an appropriate program in connection with his IEP.

### G. **SRO Krolak's October 18, 2017 Decision**

Plaintiffs submitted a Request for Review on September 13, 2017, seeking SRO review of IHO Monk's decision. *See* DE [43-6]. Plaintiffs maintained that IHO Monk misconstrued the meaning of IHO Lederman's order, specifically that IHO Lederman's order required that prior to "outsourcing" A.K.'s placement, the District must undertake a "meaningful analysis" and "good faith" attempt to implement A.K.'s IEP internally, including consideration of possible reasonable modifications, augmentation or reallocation of special education and related services resources necessary to meet the IEP goals "within district." *See id.* at 2-3, ¶ 6. As such,

Plaintiffs requested that an SRO reverse IHO Monk's decision and order the District to enroll A.K. within-District and within a mainstream setting, and hire a qualified individual to assist the District in this effort and a judgment for compensatory education and reimbursement of attorney fees. *See id.* at 10.

SRO Krolak reviewed Plaintiffs' appeal of the IHO Monk decision that determined that the educational program the District's CSE recommended for 2016-2017 and 2017-2018 was appropriate and sustained the appeal in part. *See* 2017 Krolak Dec. Initially, SRO Krolak deemed abandoned several issues previously asserted in Plaintiffs' due process complaint but not raised on appeal. *See id.* at 12. As such, the sole issue on review before SRO Krolak was Plaintiffs' allegation that the District "has a duty to meaningfully analyze and make a good faith attempt to implement the student's educational goals within the district before placing the student in an out of district placement, and that the district failed to do so." *Id.*

To determine whether the District's IEP placed A.K. in the LRE, SRO Krolak utilized the Second Circuit's two-prong test set forth in *P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 119-20 (2d Cir. 2008). Under *Newington*, the analysis considers: (1) whether education in the general classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given student, and, if not, (2) whether the school has mainstreamed the student to the maximum extent appropriate. *See id.* SRO Krolak noted that a determination as to the first prong is made through examining a non-exhaustive list of factors, including whether the district made reasonable efforts to accommodate the child in a regular classroom;

14

the educational benefits available to the child in a regular class with appropriate supplementary aids and services, as compared to the benefits provided in a special education class; and the possible negative effects of the inclusion of the child on the education of the other students in the class. *See id.* at 120; 2017 Krolak Dec. at 15.

In determining whether Westhampton fulfilled the first *Newington* prong, whether A.K. can be educated satisfactorily in a general education class with supplemental aids and services, SRO Krolak reviewed A.K.'s then-present levels of performance. A.K.'s reports placed him at or below the first percentile in reading comprehension, spelling, listening comprehension and mathematics; in the low range in single-word reading and in the low average range in pseudo-word decoding; and below the first percentile in speech-language skills. *See* 2017 Krolak Dec. at 16. The reports noted that A.K. required prompts to regulate food intake, as well as chew and swallow in a safe and socially appropriate manner, and that he presented with decreased postural and upper extremity tone, strength and endurance, ocular motor weakness and decreased fine and gross motor skills, as well as a decreased ability to attend to gross motor activities in a large group setting. *See id.* A.K.'s IEP indicated that he enjoyed social interaction, and frequently interrupted groups of people by trying to hug them or stand in front of individuals. *See id.* Finally, the IEP indicated that A.K. required an established and predictable routine and structured environment, with individualized attention to focus on tasks, as well as intensive supervision to function in the classroom. *See id.* He required a program with a low student-to-teacher ratio and minimal distractions to academically progress. *See id.*

SRO Krolak also reviewed both inclusion consultants' reports, as well as the information each consultant reviewed to arrive at her results and recommendations, *see id.* at 16-22, and determined that, given the consultants' "extensive review of the district's available services," the CSE participants had "ample" information regarding the District's resources to determine the student's LRE and whether the District could provide the student with a FAPE in a general education setting. *See id.* at 22. Further, SRO Krolak noted that the CSE participants "grappled" with the Plaintiffs' preference to educate A.K. within-District, as well as Feeley's recommendations to that effect, "at length." *See id.* The record reflects that several participants asked questions in an effort to ascertain how Feeley's recommendations could be implemented in-District. *See id.* SRO Krolak concluded that the District made "reasonable efforts to consider accommodations for the child in a general education classroom, as well as the benefits and drawbacks of placing him in that setting, and therefore appropriately determined that the student could not be satisfactorily educated in a general classroom with the use of supplemental aids and services." *Id.* at 25-26. Moreover, SRO Krolak determined that the CSE's recommendations not only provided A.K. with a FAPE, but also constituted his LRE. *See id.* at 26.

As to the second *Newington* prong, SRO Krolak concluded that the evidence in the record demonstrated that the District attempted to provide Plaintiffs with two options for out-of-District placements because other districts indicated they were capable of implementing the special class placement recommended on the IEP when the District determined it was not possible to implement the IEP in-District. *See id.*

at 27.  SRO Krolak further noted that the District utilized a reasonable procedure to locate an appropriate educational setting in a neighboring district, specifically, canvassing neighboring districts to determine whether they had an appropriate placement that could meet A.K.'s needs and offering to facilitate site visits.  *See id.* SRO Krolak cited to the fact that in response, through a series of identical letters, the Parents wrote to each CSE participant on the attendance list for a CSE meeting, including A.K.'s special education teacher, school psychologist and representatives of neighboring school districts, and warned them that if they attended or participated in that meeting, they would "become entangled in outstanding State and Federal litigation." *Id.* at 28.

SRO Krolak determined that Westhampton did not deny A.K. a FAPE by recommending a special class placement and attempting to locate one in a neighboring district, but noted that the District "is not absolved of its obligation to continue to attempt to educate the student in the school he would have attended if not disabled unless the student's IEP requires some other arrangement." *See id.*  As such, SRO Krolak overturned the portion of IHO Monk's order directing that when the CSE reconvenes to recommend an appropriate placement, it should not consider placement of the student within the District. *See id.* at 28-29.

## H. IHO Murphy's June 15, 2018 Interim Order

On March 12, 2018, Plaintiffs commenced a second proceeding, challenging the recommendations arising out of a CSE meeting held on March 5, 2018.  *See* June 15, 2018 Interim Order of IHO Leah L. Murphy ("IHO Murphy Order"), DE [105-1],

Exhibit ("Ex.") B.  During these proceedings, the Parents requested a hearing as to A.K.'s pendency placement.  *See id.*  In denying the Parents' request, IHO Murphy noted that they acknowledged the agreed-upon pendency placement during pre-hearing conference calls.  *See id.* at 2, 7.  The Parents asked the District to allow A.K. to attend Westhampton for lunch and electives, and the District refused to amend the prior agreement as to A.K.'s placement during the pendency of all proceedings and litigation ("pendency agreement").  *See id.* at 7.  While acknowledging that A.K.'s current pendency placement is "the most restrictive and he would be better served if he had more opportunities to be educated in a school setting," IHO Murphy determined that the pendency agreement had been acknowledged before her and in previous decisions.  *See id.* at 7-8.  Moreover, IHO Murphy concluded that the pendency provisions of the IDEA and New York State Education law require a student to remain in the then-current educational placement until such proceedings have been completed, and that pendency placement and appropriate placement are "separate and distinct concepts."  *Id.* at 9.  As such, IHO Murphy found Plaintiffs' request for a hearing on the issue of pendency to be inappropriate, and therefore denied the request.  *See id.* at 10.

## I.  SRO Krolak's July11, 2018 Decision

On appeal, SRO Krolak concluded that IHO Murphy correctly denied Plaintiffs' request for a change in pendency.  *See* July 11, 2018 Decision of SRO Krolak ("2018 Krolak Dec."), DE [105-1], Ex. A, at 7.  In so concluding, SRO Krolak acknowledged IHO Murphy's review of the administrative record and previous decisions involving

the student, as well as her "careful[]" consideration of Plaintiffs' position, before "correctly reaching the conclusion that [A.K.'s] pendency placement had been determined by agreement of the parties and acknowledged in prior proceedings." *Id.* SRO Krolak agreed with IHO Murphy that Plaintiffs were not entitled to a change in pendency, and that their "desire to augment the student's pendency placement without the consent of the district does not constitute a pendency changing event." *Id.* Initially, SRO Krolak rejected Plaintiffs' argument that pendency should be flexible because of their perceived notion that if a state-level administrative decision, such as that issued by an SRO, agrees with a student's parents that a change in placement was appropriate, such decision will effectuate a change in pendency placement. *See id.* at 8. SRO Krolak concluded that such a decision pertains only to "overall litigation regarding tuition reimbursement." *See id.* Next, SRO Krolak rebuffed Plaintiffs' argument that pendency is flexible where the parties intended the placement to be temporary. *See id.* at 8-9. Last, he concluded that Plaintiffs' argument that a modification of pendency placement would align with the "best interests" of A.K. was unavailing, as pendency is evaluated independently from the appropriateness of the program the CSE offered. *See id.* at 9. Accordingly, SRO Krolak determined that IHO Murphy correctly denied Plaintiffs' request for a change in pendency, and found that absent a pendency changing event, A.K. must remain in his pendency placement for the duration of the due process proceedings. *See id.*

### J.  Procedural History

Based on the above facts, Plaintiffs commenced this action against Defendants by way of Complaint dated February 16, 2017, *see* Compl., and were permitted to file their ACC and SACC after this matter was consolidated with other suits before the Court with identical parties and facts.  *See* February 16, 2018 Electronic Order; August 10, 2018 Electronic Order.  The SACC alleged violations of:  (1) the IDEA; (2) the ADA; (3) 42 U.S.C. § 1983; and (4) Section 504 of the Rehabilitation Act, as well as (5) appealed IHO Monk's and SRO Krolak's 2017 administrative decisions; (6) sought an equitable order directing Defendants to enroll A.K. and to utilize an inclusion consultant to design A.K.'s IEP for implementation within the District; and (7) appealed SRO Krolak's 2018 decision.  *See generally* SACC.  Defendants filed their Answer to the SACC on November 30, 2018.  *See* Ans.

On December 6, 2018, Defendants moved for partial judgment on the pleadings as to Plaintiffs' first through fourth, and sixth causes of action, *see* DE [60], in response to which Plaintiffs moved for partial summary judgment as to their first through fourth causes of action.  *See* DE [62].  On September 27, 2019, Judge Joanna Seybert[4] issued an opinion granting in part and denying part Defendants' motion for judgment on the pleadings, and denying Plaintiffs' motion for partial summary judgment.  *See* DE [72].  Specifically, Judge Seybert dismissed:  (i) Plaintiffs' ADA and Rehabilitation Act claims against the Individual Defendants; and (ii) Plaintiffs' "IDEA-based, due process-based, and discrimination-based Section 1983 claims

---

[4] This matter was transferred from Judge Spatt to Judge Seybert on April 11, 2018, and from Judge Seybert to Judge Brown on January 31, 2020.

against all Defendants," with prejudice, and (iii) Plaintiffs' "IDEA claim and equal protection-based Section 1983 claims against all Defendants"; and (iv) request for equitable relief, without prejudice. *See generally id.* Judge Seybert directed that discovery proceed as to the surviving claims: (1) Plaintiffs' ADA and Rehabilitation Act claims against the District; and (2) Plaintiffs' appeals of IHO Monk's and SRO Krolak's 2017 and 2018 administrative decisions. *Id.*

Discovery commenced thereafter. On June 3, 2020, Plaintiffs filed two motions for partial summary judgment as to the 2017 and 2018 administrative decisions, *see* DEs [97], [98], and filed another pair of nearly identical motions on June 5, 2020. *See* DEs [104], [105]. All four motions were referred to this Court for Report and Recommendation on August 11, 2020. *See* August 11, 2020 Electronic Orders. The June 3 motions were subsequently withdrawn without prejudice because they were redundant of the June 5 motions. *See* DE [110]. On January 6, 2021, this Court recommended to Judge Brown that Plaintiffs' motions for partial summary judgment as to the 2017 and 2018 administrative decisions be denied. *See* January 6, 2021 Report and Recommendation ("2021 R&R"), DE [114]. Judge Brown adopted the 2021 R&R in its entirety on January 25, 2021.

The parties completed discovery on February 23, 2021. *See* DE [122]. On referral from Judge Brown, *see* March 11, 2021 Electronic Order, Defendants moved for summary judgment on April 21, 2021, *see* Def. Mot., which Plaintiffs opposed and against which they cross-moved for partial summary judgment as to their ADA and Rehabilitation Act claims on May 19, 2021. *See* Pl. Mot. For the reasons set forth

21

below, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; and (iii) the Second Amended Consolidated Complaint be dismissed with prejudice and without leave to replead.

## II.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 56

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. [T]he nonmoving party must come forward with specific facts

showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## B. *Pro Se* **Pleadings**

It is well-established that pleadings filed by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks and citation omitted). Where an attorney is proceeding *pro se*, however, his pleadings are not entitled to the "special consideration which the courts customarily grant to *pro se* parties." *Bazadier v. McAlary*, 464 Fed. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted).

"[A]s the Court's prior orders note, Plaintiff [Christian Killoran] is an attorney. Accordingly, his pleadings are not entitled to the 'special consideration which the

courts customarily grant to *pro se* parties.'" *Killoran on behalf of A.K. v. Westhampton Beach Union Free Sch. Dist.*, No. 20-cv-0269, 2021 WL 1220713, at *1 (E.D.N.Y. Mar. 31, 2021) (quoting *Killoran v. Westhampton Beach Sch. Dist.*, No. 20-cv-4121, 2020 WL 5424722, at *1 (E.D.N.Y. Sept. 10, 2020) (internal quotation marks and citation omitted)).

## III.    DISCUSSION

Applying the standards set forth above, and for the reasons set forth below, the Court respectfully recommends that: (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; and (iii) the Second Amended Consolidated Complaint be dismissed with prejudice and without leave to replead.

### A.  **Plaintiffs' Disability Discrimination Claims**

Initially, both parties seek summary judgment as to Plaintiffs' disability discrimination claims, which are brought under Title II of the ADA, and Section 504 of the Rehabilitation Act (collectively, the "Acts"). *See generally* Def. Mot.; Pl. Mot. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against "otherwise qualified" disabled individuals. 29 U.S.C. § 794(a).

Though there are minor differences between the two statutes, courts regularly analyze claims under Title II of the ADA and Section 504 of the Rehabilitation Act identically and simultaneously. *See, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.")); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001) (Section 504 and the ADA "offer essentially the same protections for people with disabilities").  Nevertheless, the Court is cognizant that the statutes are not identical, but "nearly identical." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014) ("there are 'subtle differences' between" the statutes) (internal citation omitted).  To assert a claim under Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff must demonstrate that:  (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability.  *See McElwee*, 700 F.3d at 640 (citing *Henrietta D.*, 331 F.3d at 272).  Likewise, a plaintiff who receives – and avails himself or herself – of a reasonable accommodation provided by a defendant, cannot sustain a disability discrimination claim against that defendant without any other allegation or evidence of discrimination.  *See McElwee*, 700 F.3d at 640-41 (citing *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 85 (2d Cir. 2004)).

25

In adjudicating disability discrimination claims brought under the Acts, courts follow the familiar burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  *See Campbell v. IPsoft Inc.*, No. 18-cv-10684, 2021 WL 4248861, at *21 (S.D.N.Y. Sept. 17, 2021); *see also Wagner v. Inter-Con Sec. Sys., Inc.*, 278 F. Supp. 3d 728, 734 (S.D.N.Y. 2017).  If all elements of a *prima facie* case are satisfied, the burden shifts to the employer to "proffer a legitimate non-discriminatory reason for its actions…."  *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).  The plaintiff must then "establish that the defendant's reason is in fact pretext" for the alleged discrimination.  *Id.*

Here, the parties agree that A.K. has a disability and that Defendants are subject to the Acts.  *See* Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, DE [137-3], at 8.  Thus, the Court's analysis centers on whether A.K. was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities" or was "otherwise discriminated against" because of his disabilities.  *Harris v. Mills*, 572 F.3d 66, 74 (2d Cir. 2009).  Discriminatory conduct may take the form, as it allegedly does here, of a refusal to afford a reasonable accommodation.  *See Davis v. Shah,* 821 F.3d 231, 260 (2d Cir. 2016) (citing *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)) ("A plaintiff may base [his] discrimination claim on…[a] failure to make a reasonable accommodation.").  The Acts, however, do not require that a disabled person be provided with every accommodation he requests.  *See McElwee*, 700 F.3d at 64 (citing *Fink v. New York City Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)).  Indeed, covered entities do not

26

need to make accommodations that would "fundamentally alter the nature of the service, program, or activity." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (citing *Alexander v. Choate,* 469 U.S. 287, 300, 105 S. Ct. 712, 719-20 (1985); *Powell*, 364 F.3d at 88).

Applying these standards, the Court concludes that Plaintiffs have failed to establish the necessary elements of their *prima facie* disability discrimination causes of action, and respectfully recommends that Defendants' Motion be granted as to these claims. Indeed, it is undisputed that: (i) upon A.K.'s June 2015 graduation from elementary school, he chose to attend Westhampton MS, *see* Pl. 56.1 ¶ 19; (ii) Remsenburg and Plaintiffs entered into the Stipulation, which, among other things, amended A.K's IEP and required Remsenburg to submit a letter to Westhampton, requesting that it implement the outlined program at Westhampton MS, *see id.*; (iii) Westhampton initially denied Remsenburg's request because it did not have an appropriate placement for A.K., *see* Lederman Dec. at 9; and (iv) the next year, Westhampton agreed to enroll A.K. and take responsibility for his CSE going forward. *See* Monk Dec. at 3. While Westhampton's initial CSE meeting following enrollment was procedurally insufficient, *see generally* Lederman Dec., it subsequently convened a proper CSE meeting and proposed to the Parents two out-of-district placements that were capable of implementing the 8:1:1 or 12:1:1 special class placement recommended on A.K.'s IEP for the 2017-2018 school year. *See* 2017 Krolak Dec. at 27. This proposal – the validity of which was subsequently upheld by SRO Krolak – was nonetheless rejected by the Parents, and served as one of the bases for their

Complaint in the instant action. *See generally* 2018 Krolak Dec.; Compl. Notwithstanding Plaintiffs' claims to the contrary, *see generally* Pl. Opp., they have not offered any evidence to contradict that the District offered A.K. the opportunity to enroll at Westhampton MS, but that the Parents opted to homeschool A.K. throughout the pendency of their legal actions. *See* Lederman Dec. at 38. Moreover, Plaintiffs' argument that the District did not offer the exact accommodation that they requested is insufficient to establish, as a matter of law, that A.K. was not offered *any* reasonable accommodation. *See Dean*, 804 F.3d at 187; *McElwee*, 700 F.3d at 641 (citing *Fink*, 53 F.3d at 567).

Based on this undisputed evidence, and their failure to identify a program or benefit to which A.K. was denied access on the basis of his disabilities, the Court concludes that Plaintiffs have failed to establish their disability discrimination causes of action. Accordingly, the Court respectfully recommends that Defendants' Motion be granted as to Plaintiffs' disability discrimination claims.

### B. <u>Plaintiffs' Appeals of the 2017 & 2018 Administrative Decisions</u>

Defendants next seek summary judgment as to Plaintiffs' appeals of the 2017 and 2018 administrative decisions rendered by IHOs Monk and Murphy, and SRO Krolak. *See generally* Def. Mot. Plaintiffs do not explicitly oppose this prong of Defendants' Motion. *See generally* Pl. Mot.

If a New York parent "believe[s] an IEP is insufficient under the IDEA," he or she "may challenge it in an 'impartial due process hearing,' 20 U.S.C. § 1415(f), before an [IHO] appointed by the local board of education." *Grim v. Rhinebeck Cent. Sch.*

*Dist.*, 346 F.3d 377, 379 (2d Cir. 2003) (quoting N.Y. Educ. Law § 4404(1)). At the hearing before the IHO, "the school district has the burden of demonstrating the appropriateness of its proposed IEP." *Id.* As the governing New York State statute explains:

> The board of education or trustees of the school district or the state agency responsible for providing education to students with disabilities shall have the burden of proof, including the burden of persuasion and burden of production, in any such impartial hearing, except that a parent or person in parental relation seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement.

N.Y. Educ. Law § 4404(1)(c).

An IHO's decision may, in turn, be appealed to an SRO, who is an officer of the State's Department of Education. *See Grim*, 346 F.3d at 379-80. Generally, either "party aggrieved" by the findings of the SRO "shall have the right to bring a civil action" in either state or federal court. 20 U.S.C. § 1415(i)(2)(A). When such an action is brought in federal district court, the court reviews the records of all of the prior administrative hearings and must hear additional evidence if so requested by either of the parties. *Id.* at § 1415(i)(2)(c).

"[The federal court] standard for reviewing a state's administrative decisions in IDEA cases is…well established." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009), *cert. denied*, 560 U.S. 904, 130 S. Ct. 3277 (2010). "The responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers. Their rulings are then subject to 'independent' judicial review." *Walczak v.*

29

*Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).  Nonetheless, "the role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'"  *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007); *see also Grim*, 346 F.3d at 380-81 (interpreting the IDEA as "strictly limiting judicial review of state administrative decisions").  A reviewing court "must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence.'"  *Gagliardo*, 489 F.3d at 112; *see also Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 3051 (1982).  Such review, however, "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."  *Rowley*, 458 U.S. at 206, 102 S. Ct. at 3051.

"To the contrary, federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'"  *Gagliardo*, 489 F.3d at 113 (quoting *Rowley*, 458 U.S. at 206-08, 102 S. Ct. at 3034) (brackets omitted); *see also Walczak*, 142 F.3d at 129 ("While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings....") (citation omitted).  District courts are not to make "subjective credibility assessment[s]," and cannot "ch[oose] between the views of conflicting experts on...controversial issue[s] of educational policy...in direct contradiction of the opinions of state administrative officers who had heard the same evidence."  *Grim*, 346 F.3d at 383.  Indeed, "once a court determines

that the requirements of the Act have been met, questions of methodology are for resolution by the States." *Rowley*, 458 U.S. at 208, 102 S. Ct. at 3052.

Accordingly, courts generally "defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer." *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (quoting *Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.*, 736 F.2d 873, 877 (2d Cir. 1984)) (internal quotation marks omitted). "If the SRO's decision conflicts with the earlier decision of the IHO, the IHO's decision may be afforded diminished weight." *A.C.*, 553 F.3d at 171 (internal quotation marks omitted). "Deference is particularly appropriate when…the state hearing officers' review has been thorough and careful." *Walczak*, 142 F.3d at 129. Nevertheless, the SRO's or IHO's factual findings must be "reasoned and supported by the record" to warrant deference. *Gagliardo*, 489 F.3d at 114.

IDEA actions in federal court are appropriately resolved by examination of the administrative record in a summary judgment posture. *See K.B. on behalf of S.B. v. Katonah Lewisboro Union Free Sch. Dist.*, No. 18-cv-9553, 2019 WL 5553292, at *5 (S.D.N.Y. Oct. 28, 2019), *aff'd sub nom. KB on behalf of SB v. Katonah Lewisboro Union Free Sch. Dist.*, 847 Fed. App'x 38 (2d Cir. 2021) (citing *J.R. v. Bd. of Educ. of City of Rye Sch. Dist.*, 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004)). In this context, however, the existence of disputed issues of material fact will not defeat summary judgment. Rather, "[f]ederal courts reviewing administrative determinations under the IDEA must base their decisions on 'the preponderance of the evidence,' taking

31

into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties." *Grim*, 346 F.3d at 380 (citing 20 U.S.C. § 1415(i)(2)(B)). The court's review "requires a more critical appraisal of the agency determination than clear-error review but falls well short of complete de novo review." *L.O. ex rel. K.T. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 108 (2d Cir. 2016) (internal quotation marks omitted).

In this context, the Court's inquiry is two-fold: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Rowley*, 458 U.S. at 206-07, 102 S. Ct. at 3051 (footnote omitted); *see also Grim*, 346 F.3d at 381. It is the burden of the school districts to prove by a preponderance of evidence that the answer to both questions is yes. *See J.R.*, 345 F. Supp. 2d at 395. It is with these standards in mind that the Court addresses Defendants' Motion.

In conducting the below analysis, the Court assumes the parties' familiarity with the facts and record of the prior administrative proceedings at issue, to which the Court refers only as necessary to explain its decision, as well as the Court's prior Report and Recommendation – and Judge Brown's subsequent denial of – Plaintiffs' summary judgment motions seeking to overturn IHO Monk's 2017 Decision and SRO Krolak's 2017 and 2018 Decisions. *See* 2021 R&R; January 25, 2021 Electronic Order.

1. <u>IHO Monk's and SRO Krolak's 2017 Decisions</u>

Initially, Defendants seek summary judgment as to the first prong of Plaintiffs' fifth cause of action, which seeks review of IHO Monk's August 15, 2017 Decision and SRO Krolak's October 18, 2017 Decision. *See generally* Def. Mot.

As noted above, IHO Monk presided over the hearing associated with the Parents' April 17, 2017 due process complaint, which alleged that Westhampton violated A.K.'s rights under the IDEA to a FAPE for the 2016-2017 academic year, as a result of the District's CSE's actions and repeated recommendations that A.K. be educated outside of Westhampton. *See generally* Monk Dec. After an impartial, week-long hearing and a review of: (i) the relevant administrative record; and (ii) the opposing recommendations of the education consultants whose engagements were ordered by IHO Lederman, IHO Monk concluded that Westhampton did not deny A.K. a FAPE vis-à-vis its recommendation that A.K. be educated outside of Westhampton. *Id.* at 14-16. In reaching this conclusion, IHO Monk noted that Westhampton did not currently have available special educational classes and instructional groupings that could accommodate A.K., and further concluded that the District sustained its burden to demonstrate that it was prepared to provide a FAPE for the challenged school years because: (i) A.K. would have made progress had he attended the recommended out-of-District placement; and (ii) the testimony and information in the administrative record did not demonstrate a reasonable accommodation Westhampton could have made, nor how A.K.'s academic deficits

could have been addressed in-District, as his "inability to function in a mainstream setting has been well established." *Id.* at 16.

On September 13, 2017, Plaintiffs sought review of IHO Monk's decision, argued that IHO Monk had misconstrued part of IHO Lederman's decision, and sought: (i) an SRO reversal of IHO Monk's decision; (ii) an order that the District enroll A.K. within-District and within a mainstream setting, and hire a qualified individual to assist the District in this effort; and (iii) a judgment for compensatory education and reimbursement of attorney fees. *See* DE [43-6] at 10. SRO Krolak reviewed Plaintiffs' appeal of IHO Monk's decision. *See* 2017 Krolak Dec. The sole issue on review before him was Plaintiffs' allegation that the District "has a duty to meaningfully analyze and make a good faith attempt to implement the student's educational goals within the district before placing the student in an out of district placement, and that the district failed to do so." *Id.* at 12. In determining whether the District's IEP placed A.K. in the LRE, SRO Krolak utilized the *Newington* test.

In determining that Westhampton fulfilled the first *Newington* prong, SRO Krolak reviewed A.K.'s then-present levels of performance, and reports that A.K. placed at or below the first percentile in reading comprehension, spelling, listening comprehension and mathematics; in the low range in single-word reading and in the low average range in pseudo-word decoding; and below the first percentile in speech-language skills. *See* 2017 Krolak Dec. at 16. SRO Krolak reviewed both inclusion consultants' reports, as well as the information each consultant reviewed to arrive at her results and recommendations, and determined that, given the consultants'

"extensive review of the district's available services," the CSE participants had "ample" information regarding the District's resources to determine the student's LRE and whether the District could provide the student with a FAPE in a general education setting. *See id.* at 16-22. SRO Krolak concluded that the District made "reasonable efforts to consider accommodations for the child in a general education classroom, as well as the benefits and drawbacks of placing him in that setting, and therefore appropriately determined that the student could not be satisfactorily educated in a general classroom with the use of supplemental aids and services." *Id.* at 25-26. Moreover, SRO Krolak determined that the CSE's recommendations not only provided A.K. with a FAPE, but also constituted his LRE. *See id.* at 26.

As to the second *Newington* prong, SRO Krolak concluded that the evidence in the record demonstrated that the District attempted to provide Plaintiffs with two options for out-of-District placements because other districts indicated they were capable of implementing the special class placement recommended on the IEP when the District determined it was not possible to implement the IEP in-District. *See id.* at 27. SRO Krolak further noted that the District utilized a reasonable procedure to locate an appropriate educational setting in a neighboring district, specifically, canvassing neighboring districts to determine whether they had an appropriate placement that could meet A.K.'s needs and offering to facilitate site visits. *See id.* SRO Krolak determined that Westhampton did not deny A.K. a FAPE by recommending a special class placement and attempting to locate one in a neighboring district, but noted that the District "is not absolved of its obligation to

continue to attempt to educate the student in the school he would have attended if not disabled unless the student's IEP requires some other arrangement." *See id.* As such, SRO Krolak overturned the portion of IHO Monk's order directing that when the CSE reconvenes to recommend an appropriate placement, it should not consider placement of the student within the District. *See id.* at 28-29.

Applying the preponderance of the evidence standard, the Court concludes that Defendants have established that IHO Monk's and SRO Krolak's 2017 decisions are supported by a preponderance of the evidence. Indeed, in reaching his decision, SRO Krolak: (i) exhaustively recounted A.K.'s then-present educational progress and capabilities, as well as testimony and reports from the inclusion experts, CSE members and others who were in regular contact with A.K. to conclude that the CSE meaningfully analyzed and rightfully decided that the District provided A.K. with a FAPE in the LRE, *see id.* at 15-29; (ii) analyzed the educational resource information that was available to the District's CSE members who recommended that A.K. be educated out-of-District, *see id.* at 15-22; (iii) evaluated Westhampton's efforts to attempt to educate A.K. in a general educational classroom, while considering the benefits and negative consequences of such a program, and determination that he could not be satisfactorily educated in a general classroom with the use of supplemental aids and services, *see id.*; and (iv) considered the District's canvassing of several neighboring districts in an attempt to determine whether they had an appropriate placement for A.K. *See id.* at 26-29.

For these reasons, and because Plaintiffs have submitted no additional evidence, the Court concludes that Defendants have established that IHO Monk's and SRO Krolak's 2017 decisions are supported by a preponderance of the evidence, and respectfully recommends that Defendants' motion for summary judgment be granted as to Plaintiffs' appeals of these decisions.

2.  <u>SRO Krolak's July 11, 2018 Decision</u>

Defendants next seek summary judgment as to Plaintiffs' seventh cause of action, which seeks review of SRO Krolak's July 11, 2018 Decision.  *See generally* Def. Mot.

"[P]endency placement and appropriate placement are separate and distinct concepts."  *Bd. of Educ. v. O'Shea*, 353 F. Supp. 2d 449, 459 (S.D.N.Y. 2005).  Once a student's pendency placement has been established, it can be changed in one of four ways: (1) by an agreement by the parties, 20 U.S.C. § 1415(j); (2) by an unappealed administrative decision, 34 C.F.R. § 300.514(a); (3) by an SRO decision that "agrees with the child's parents that a change of placement is appropriate," 34 C.F.R. § 300.518(d); or (4) by a court determination on an appeal from an SRO decision.  *See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002).

As noted above, Plaintiffs' appealed IHO Murphy's denial of Plaintiffs' request for a change in A.K.'s pendency to SRO Krolak.  *See* 2018 Krolak Dec.  In affirming IHO Murphy's finding, SRO Krolak acknowledged IHO Murphy's review of the administrative record and previous decisions involving A.K., as well as her "careful[]" consideration of Plaintiffs' position, before "correctly reaching the conclusion that the

student's pendency placement had been determined by agreement of the parties and acknowledged in prior proceedings." *Id.* SRO Krolak agreed with IHO Murphy that Plaintiffs were not entitled to a change in pendency, and that their "desire to augment the student's pendency placement without the consent of the district does not constitute a pendency changing event." *Id.* Accordingly, none of the first three grounds for modification of the pendency placement are present.

Applying the preponderance of the evidence standard to the fourth basis for modification, the Court concludes that Defendants have established that SRO Krolak's 2018 decision is supported by a preponderance of the evidence. SRO Krolak reviewed previous related administrative decisions and carefully considered Plaintiffs' position before concluding that the parties agreed to and acknowledged the current pendency placement. *See generally* 2018 Krolak Dec. Specifically, SRO Krolak: (i) noted that in prehearing conferences and conference calls, the Parents acknowledged that the parties agreed to A.K.'s current pendency placement, *see id.* at 7; and (ii) found that previous decisions, such as that of IHO Monk, acknowledge the parties' agreement as to A.K.'s pendency placement. *Id.* SRO Krolak also agreed with IHO Murphy's conclusions that the Parents' request to alter A.K.'s pendency placement "border[ed] on frivolous" and was unsupported by Second Circuit caselaw. *See generally* 2018 Krolak Dec.

For these reasons, and because Plaintiffs have submitted no additional evidence, the Court concludes that Defendants have established that SRO Krolak's 2018 decision is supported by a preponderance of the evidence, and respectfully

38

recommends that Defendants' motion for summary judgment be granted in its entirety.

### C. <u>Leave to Replead</u>

It is apparent at this juncture that further amendment of the SACC would be futile, and the Court recommends that Plaintiffs not be granted an additional opportunity to replead their claims in a Third Amended Consolidated Complaint. *See Beach v. Walter*, No. 18-cv-5722, 2019 WL 4640009, at *4 (S.D.N.Y. Sept. 24, 2019) (denying *pro se* plaintiff the opportunity to file a third amended complaint because the issues with plaintiff's claims were "substantive" and could not be cured by "better pleading) (internal citation omitted); *Padmanabhan v. New York Inst. of Tech. Campus, New York*, No. 18-cv-5284, 2019 WL 4572194, at *6 (S.D.N.Y. Sept. 20, 2019) (same).

### IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that:  (i) Defendants' Motion be granted in its entirety; (ii) Plaintiffs' Motion be denied in its entirety; and (iii) the Second Amended Consolidated Complaint be dismissed with prejudice and without leave to replead.

### V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below.  Defendants are directed to promptly serve a copy of this Report and Recommendation on Plaintiffs and file proof of service.  Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            December 22, 2021

                                   /s/ Steven I. Locke
                                   STEVEN I. LOCKE
                                   United States Magistrate Judge